[No. B105729. Second Dist., Div. Three. Apr. 17, 1997.]

FEDERAL DEPOSIT INSURANCE CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BMB PROPERTIES et al., Real Parties in Interest.

338

**COUNSEL**

Levinson & Lieberman and Lawrence R. Lieberman for Petitioner.

No appearance for Respondent.

Kaplan, Kenegos & Kadin, Jerry Kaplan and D. Scott Kadin for Real Parties in Interest.

## OPINION

**CROSKEY, J.**—The Federal Deposit Insurance Corporation (FDIC), as receiver for Mercury Federal Savings & Loan Association (Mercury), petitions for a writ of mandate directing the superior court to vacate its order granting the motion for summary adjudication of issues made by real parties in interest BMB Properties, a general partnership, and two of its general partners, David Beroukhim and Baroukh Beroukhim (hereafter, collectively, BMB). Summary adjudication was granted in BMB's favor as to three of five causes of action in a lawsuit brought against BMB by the FDIC,[1] and as to four of five causes of action in a separate lawsuit brought by BMB against Mercury,[2] which was consolidated with the FDIC's action.

The FDIC's lawsuit was brought to recover sums which Mercury loaned in 1984 to David and Joseph Melamed (the Melameds), former members of the BMB partnership, who claimed they were still partners. The loan was made in reliance upon a guarantee purportedly executed by BMB, and upon two deeds of trust on BMB real property. BMB's action was brought to invalidate the guarantee and trust deeds.[3]

Summary adjudication was granted in BMB's favor because: (1) it was undisputed that the signatures purporting to be the Beroukhims' on the guarantee, trust deeds and supporting documents were forged, and (2) although named in BMB's partnership agreement and its original

---

[1]Mercury originally filed the complaint on October 31, 1988. In approximately 1990, Mercury was placed into receivership with the Resolution Trust Corporation (RTC), which acquired substantially all of Mercury's assets. After December 31, 1995, the FDIC became the successor to the claims and assets held by the RTC pursuant to a federal statute (12 U.S.C. § 1441a(m).

[2]Although this action named Mercury as the defendant, for convenience and to avoid confusion we will hereafter refer to the FDIC as the defendant in BMB's action.

[3]Specifically, the FDIC sought enforcement of the guarantee (first cause of action), damages for fraudulent misrepresentation against the Melameds (second cause of action), declaratory relief (third cause of action), judicial foreclosure of the trust deeds (fourth cause of action), and damages for official misconduct or negligence against the notary who acknowledged the signatures on the guarantee and trust deeds, and against the notary's bond (fifth cause of action). BMB sought declaratory relief (first cause of action), cancellation of the instruments (second cause of action), quiet title to the encumbered properties (third cause of action), an injunction against foreclosure of the trust deeds (fourth cause of action), and damages for slander of title (fifth cause of action). Summary adjudication was granted as to the FDIC's first, third and fourth causes of action, and BMB's first through fourth causes of action.

statement of partnership, the Melameds were deleted from the list of partners in several amended statements of partnership which BMB recorded between 1980 and 1983; the trial court found that the recorded, amended statements of partnership created a conclusive presumption, pursuant to Corporations Code section 15010.5,[4] that the Melameds were not partners in 1984, and thus had no authority to bind the partnership or encumber its property.

The FDIC filed its petition for writ of mandate, together with an application for a stay of trial as to the single remaining cause of action, BMB's cause of action for slander of title, on September 30, 1996.[5] On October 3, 1996, we issued the requested stay, and on November 21, 1996, we issued an alternative writ of mandate and set the matter for hearing.

We find that the trial court improperly applied the conclusive presumption created by section 15010.5. That statute, which concerns statements of partnership and their recordation, provides that "[i]t shall be conclusively presumed, *in favor of any bona fide purchaser for value*" of partnership real property, that the persons listed in the statement are partners, and are all of

---

[4]Unless otherwise noted, all further statutory references are to the Corporations Code.

Section 15010.5 provides in pertinent part that: "(1) A statement of partnership, in the name of the partnership, signed, acknowledged and verified by two or more of the partners, or such a statement signed by two or more of the partners as individuals, acknowledged and verified by each signing partner, may be recorded in the office of the county recorder of any county. . . . The statement shall set forth the name of the partnership and the name of each of the partners, and shall state that the partners named are all of the partners. . . . [¶] It shall be conclusively presumed, in favor of any bona fide purchaser for value of the partnership real property located in a county in which such statement . . . has been recorded, that the persons named as partners therein are members of the partnership named and that they are all of the members of the partnership, . . . unless there is recorded by anyone claiming to be a partner, or a personal representative . . . a statement of partnership, verified and acknowledged by the person executing it, which shall set forth the name of the partnership, a statement that such person claims to be a member of such partnership, or a personal representative of such member, or a statement that any of the persons named in a previously recorded statement of partnership are not members of such partnership. [¶] (2) As used in this section . . . 'conveyance' includes every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged, or encumbered, or by which the title to any real property may be affected, except wills; . . . and 'purchaser' includes any person acquiring an interest under any such instrument."

[5]In its application for immediate stay, the FDIC stated that it had entered into a settlement with the notary and bonding company sued in its fifth cause of action, and that the only matter remaining to be tried was BMB's fifth cause of action for slander of title. Neither the FDIC nor BMB explains what has become of the FDIC's second cause of action against the Melameds, as to which summary adjudication was not entered. However, the record suggests that the Melameds made no appearance in the proceedings below, and the FDIC states in its petition for writ of mandate that, after the FDIC and BMB lawsuits were filed, "various bankruptcy filings of various parties and removal petitions on jurisdictional grounds delayed the case coming back to trial until 1996. The issues involved in those various matters are not the subject of this Petition." Inferably, one of the federal actions rendered actions against the Melameds in state court moot or otherwise not viable.

the partners, unless a later verified and duly recorded statement of partnership states otherwise. (§ 15010.5, subd. (1), italics added.) A "purchaser" for purposes of section 15010.5 includes a mortgagee or holder of a deed of trust. (§ 15010.5, subd. (2).) The trial court applied the conclusive presumption in section 15010.5 *against* the FDIC, a bona fide purchaser of partnership real property within the meaning of the statute. This was error.

Without application of the conclusive presumption, there are triable issues of fact as to whether the Melameds were actual or ostensible agents of the partnership, and thus could validly bind the partnership. We therefore grant the petition for writ of mandate.

### Factual and Procedural Background

BMB is a California general partnership formed in 1979 to purchase and operate two apartment buildings in Los Angeles. The Melameds were signers of the original partnership agreement, and both were listed in the partnership's original statement of partnership, which was recorded in 1979. David Melamed was listed in the partnership agreement as one of three managing partners. In 1980 and 1983, BMB recorded amended statements of partnership which did not list the Melameds as partners. Nevertheless, throughout these years, BMB continued to identify the Melameds as partners in partnership tax returns and to pay partnership draws to the Melameds, and the record does not indicate that the partnership agreement was ever amended.

In 1984, the Melameds personally borrowed $750,000 from Mercury, which required guarantees and security for the loan. In order to provide the necessary guarantee and security, the Melameds executed trust deeds on the BMB properties. They submitted to Mercury a copy of the partnership agreement, which listed them both as general partners. They also submitted partnership K-1 schedules for 1982 and 1983 tax returns which identified David Melamed as a general partner.[6]

Because the partnership agreement did not authorize partners to encumber partnership property, Mercury required an amendment to the partnership agreement which (1) confirmed that the Melameds were partners, and (2) authorized partners to guarantee loans and to pledge partnership assets as security for such guarantees. The amendment bears the signatures of the

---

[6]Partnership tax returns from 1979 through 1987 were evidently furnished to both Melameds and identified both as partners. However, it appears that the only tax documents furnished to Mercury were those furnished to David Melamed and identifying him as a partner.

Melameds and the purported signatures of the Beroukhims. However, it is undisputed that the signatures of the Beroukhims were forged.

The Beroukhims first learned of the guarantee and the trust deeds when Mercury served them with a notice of default on the trust deeds in 1987. At that time, BMB denied that it was bound by the forged guarantee and trust deed. The within consolidated actions were then brought to resolve the competing contentions with respect to these obligations.

BMB moved for summary adjudication of issues. After a hearing, the trial court ruled as a matter of law that BMB was not bound by the purported guarantee, in view of (1) the forgeries of the Beroukhims' signatures, and (2) the amended, recorded statements of partnership deleting the Melameds as general partners, which the trial court believed created a conclusive presumption that the Melameds were not partners in 1984. The court therefore granted summary adjudication as to all of the FDIC's causes of action against BMB and as to all of BMB's action against the FDIC, with the exception of one cause of action for slander of title. This timely petition for writ of mandate followed.

## CONTENTIONS

The FDIC contends that: (1) the trial court incorrectly applied the conclusive presumption created by section 15010.5; and (2) absent the presumption, there are triable issue of fact as to whether the Melameds had actual or ostensible authority, as partners of BMB, to encumber partnership property.

## DISCUSSION

### 1. *Standard of Review*

■ Summary adjudication is properly granted when the evidence in support of the moving party establishes that there is no issue of fact to be tried as to a particular cause of action, affirmative defense, claim for damages or issue of duty. (Code Civ. Proc. § 437c, subd. (f); *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) The aim of the procedure is to discover whether the parties possess evidence requiring the weighing procedures of a trial. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851 [94 Cal.Rptr. 785, 484 P.2d 953].) For a defendant to prevail on a summary adjudication motion, the defendant must conclusively negate a necessary element of one or more of the plaintiff's causes of action or establish a complete defense. (§ 437c, subd. (o)(2); *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573,

586-590 [37 Cal.Rptr.2d 653].) For a plaintiff or cross-complainant to prevail, such party must show there is no material factual dispute with respect to one or more causes of action. (Code Civ. Proc., § 437c, subd. (*o*)(1); *Union Bank* v. *Superior Court, supra*, 31 Cal.App.4th at pp. 584-585.) The trial court must decide if a triable issue of fact exists. If none does, and the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law. (*EOTT Energy Corp.* v. *Storebrand Internat. Ins. Co.* (1996) 45 Cal.App.4th 565, 572 [52 Cal.Rptr.2d 894].)

■      An order granting summary adjudication may be reviewed by way of a petition for writ of mandate, filed within 20 days of entry of the challenged order. (Code Civ. Proc., § 437c, subd. (*l*).) Review is limited to the facts contained in the documents presented to the trial court. (*Coca-Cola Bottling Co.* v. *Lucky Stores, Inc.* (1992) 11 Cal.App.4th 1372, 1377 [14 Cal.Rptr.2d 673].) The reviewing court accepts as true the facts alleged in affidavits by the party against whom the summary adjudication is ordered (*Walter E. Heller Western, Inc.* v. *Tecrim Corp.* (1987) 196 Cal.App.3d 149, 156 [241 Cal.Rptr. 677]), and exercises independent judgment as to the legal effect of the undisputed facts disclosed by the parties' papers. (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

2.   *The Conclusive Presumption in Section 15010.5 Applies Only "in Favor of" a Purchaser of Partnership Real Property*

■      In this case, as we have observed above, the trial court held that there were no material issues of fact, because the court believed the amended statements of partnership which BMB recorded in 1980 and 1983 gave rise to a conclusive presumption that the Melameds were not partners of BMB in 1984 and had no authority to execute the guarantee and trust deeds which they executed in favor of Mercury. In so holding, the trial court applied *against* the FDIC, a bona fide purchaser for value of BMB partnership property, the conclusive presumption provided in section 15010.5.

In applying the presumption against the FDIC, the court erred.   ■   To conclude otherwise would be to contravene three of the most fundamental principles of statutory construction: (1) in construing a statute, courts look first to the plain language of the statute (*Lundquist* v. *Reusser* (1994) 7 Cal.4th 1193, 1204 [31 Cal.Rptr.2d 776, 875 P.2d 1279]); (2) the expression of some things in a statute necessarily implies the exclusion of things not expressed (*Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745]); and (3) a statute is construed to give effect to all of its parts and to avoid rendering some words surplusage (*Woosley* v. *State of California* (1992) 3 Cal.4th 758, 776 [13 Cal.Rptr.2d 30, 838 P.2d 758]).

■ The plain language of section 15010.5 provides that "[i]t shall be conclusively presumed *in favor of* any bona fide purchaser for value of the partnership real property . . ." (Italics added.) that the persons listed in a recorded statement of partnership are partners, and are all of the partners, of the partnership. The express provision that the presumption benefits bona fide purchasers of partnership property implies that the presumption is not intended for the benefit of other persons. (*Gikas* v. *Zolin, supra,* 6 Cal.4th at p. 852; *Dyna-Med., Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13 [241 Cal.Rptr. 67, 743 P.2d 1323].) Further, the words "in favor of any bona fide purchaser for value of the partnership real property" would be rendered a complete nullity or surplusage if the presumption were construed to apply in favor of any party seeking to rely upon it. We thus are compelled to conclude that the Legislature included those words with the intent that they should limit the application of the conclusive presumption. (*Lundquist* v. *Reusser, supra,* 7 Cal.4th at p. 1204; *Gikas* v. *Zolin, supra,* 6 Cal.4th at p. 852; *Woosley* v. *State of California, supra,* 3 Cal.4th at p. 776.)

■ Conclusive presumptions, as is now well recognized, are not truly rules of evidence, but are substantive rules of law, which exist to further particular social policies and purposes. (*Estate of Cornelious* (1984) 35 Cal.3d 461, 464 [198 Cal.Rptr. 543, 674 P.2d 245]; *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 619 [7 Cal.Rptr. 129, 354 P.2d 657]; see generally, 1 Witkin, Cal. Evidence (3d ed. 1986) § 277, pp. 237-238.) ■ The purpose of section 15010.5 is to protect "purchasers" of partnership real property. (*Owens* v. *Palos Verdes Monaco* (1983) 142 Cal.App.3d 855, 868 [191 Cal.Rptr. 381], overruled on other grounds in *Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510 [28 Cal.Rptr.2d 475, 869 P.2d 454].) "Purchasers" within the meaning of the statute include mortgagees and beneficiaries of deeds of trust. (§ 15010.5, subd. (2).) The effect of the conclusive presumption is to make binding upon a partnership obligations which are incurred in the partnership's name by persons listed in a recorded partnership statement, to the extent that such obligations are within the authority of a partner under (1) the Uniform Partnership Act (§ 15001 et seq.), (2) general principles of agency, and (3) any particular agreements among the partners of which a purchaser has notice.[7]

■ The conclusive presumption created by section 15010.5 is, in essence, a particular application of the more general conclusive presumption in

---

[7]Section 15010.7, which was enacted in 1984 (Stats. 1984, ch. 477, § 3, p. 1946), provides that a statement of partnership which is recorded pursuant to section 15010.5 may include restrictions upon the partners' authority to encumber partnership property, and that a statement of partnership which includes such restrictions provides constructive notice of the restrictions within any county in which it is recorded.

section 623 of the Evidence Code. That section provides that "[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." Similarly, under section 15010.5, if a partnership, by recording a statement of partnership, deliberately leads others to believe, and act upon the belief, that the persons listed in the statement of partnership are partners, then the partnership will not be permitted to deny that the listed partners had authority to act as such, unless a verified and acknowledged statement to the contrary has later been recorded. In other words, if a partnership wants to avoid the burden of this statutory conclusive presumption as to the identity of its current members, it must record an amended statement of partnership which accurately reflects any changes which have occurred in its membership since the recording of an original or prior statement of partnership. Under section 15010.5, once such amended statement is recorded, a party claiming to be a subsequent bona fide purchaser of partnership property will not have the benefit of a conclusive presumption to establish any membership in the partnership contrary to the current recorded statement.

However, nothing in section 15010.5 suggests that persons *other than the partnership itself* are conclusively bound by the content of a statement of partnership. Nor does any language in the statute suggest that a good faith purchaser of partnership property may be denied a claim or recourse *against* a partnership, if the purchaser relied upon evidence *other than* the partnership's most recently recorded statement of partnership and dealt with a person not listed in that statement. Under the statutory language, the only consequence in such a circumstance is that the purchaser must establish his claim against the partnership without the assistance of a conclusive presumption.

Here, based upon BMB's original recorded statement of partnership, the FDIC would have had the benefit of a conclusive presumption *in its favor* that the Melameds were partners *if* BMB had not subsequently recorded the amended statements of partnership which deleted the Melameds. The recording of the amended statements of partnership relieved BMB of that conclusive presumption, but it did not transfer to BMB the benefit of the presumption. Absent the presumption, both parties may, and must, litigate the question of the Melameds' authority to bind the partnership on the basis of all of the evidence.

Because the conclusive presumption of section 15010.5 could not properly apply *against* the FDIC, summary adjudication of the question as to whether

or not the Melameds effectively bound the partnership was proper only if the evidence raised no dispute as to that question. We now consider that issue.

### 3. *Evidence Adduced by the FDIC Raises Triable Factual Issues as to the Melameds' Authority to Bind the Partnership*

■ Documents filed by the FDIC in opposition to the motion for summary adjudication established that BMB, at all times from the formation of the partnership through 1984, continued to pay partnership draws to the Melameds and continued to list the Melameds as partners on partnership tax returns, despite the deletion of the Melameds from several statements of partnership recorded after 1980. This evidence raises a triable factual issue as to whether the Melameds were actually partners, or at least had ostensible authority to bind the partnership, in October of 1984, when they borrowed funds from Mercury.

Section 15009 provides that "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership . . . binds the partnership, unless the partner so acting *has in fact no authority* to act for the partnership in the particular matter, and the person with whom he is dealing *has knowledge* of the fact that he has no such authority." (§ 15009, subd. (1), italics added.) The statute further provides that "An act of a partner which is *not* apparently for carrying on of the business of the partnership in the usual way does *not* bind the partnership *unless authorized* by the other partners." (§ 15009, subd. (2), italics added.)

Here, the loan which the Melameds obtained from Mercury was a personal loan and was *not* apparently or actually for carrying on the business of the partnership. Mercury therefore required the Melameds to furnish proof that they were authorized to execute a guarantee of the loan in the name of the partnership and to execute trust deeds on partnership real property. The Melameds furnished such proof in the form of an amendment to the BMB partnership agreement, which expressly authorized such acts. However, two of the signatures on that amendment were forged.

Because the signatures of two partners were forged, the trial court concluded that (1) the amendment was a nullity; and (2) the guarantee and trust deeds were consequently null and void as well, because the Melameds did not have *actual* authority to bind the partnership, as appears to be required by section 15009. However, we find that a different result is required by different statutory provisions, which more appropriately apply to the facts of

this case. These are section 15016 and Civil Code section 3543. Section 15016, subdivision (2), provides that, "[w]hen a person has been . . . represented to be a partner in an existing partnership, or with one or more persons not actual partners, he is an agent of the persons consenting to such representation to bind them to the same extent and in the same manner as though he were a partner in fact, with respect to persons who rely upon the representation." Civil Code section 3543 states the well-established equitable principle that "[w]here one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

If the forged amendment to the partnership agreement and the forged guarantee and trust deeds which it purported to authorize had been the only documents furnished by the Melameds in support of their loan application, it is unlikely that either section 15016 or Civil Code section 3543 would apply, for no amount of care on the part of the Beroukhims could have prevented the forging of their signatures and a dishonest or negligent notary's acknowledgment thereof. However, the Melameds also provided partnership tax returns for the years 1982 and 1983, in which David Melamed was identified as a partner. It was not wholly unreasonable for Mercury to infer from these documents that Melamed was indeed a partner in BMB and that the *notarized* documents which the Melameds presented in support of their loan application were genuine. While Mercury could have conducted a search of public records and discovered the amended statements of partnership, its decision not to do so may well have been substantially influenced by the existence of current tax documents, prepared by BMB's accountant, which represented that David Melamed was indeed a partner, a circumstance which raises an issue of fact as to whether the Melameds were ostensible agents of the partnership within the meaning of section 15016.

In addition to the effect of section 15016, we also must consider the impact of Civil Code section 3543, which creates an estoppel based upon misplaced confidence by one victim of fraud, resulting in victimization of the other. Such misplaced confidence has been held to be negligence within section 3543. (*Wurzl* v. *Holloway* (1996) 46 Cal.App.4th 1740, 1752 [54 Cal.Rptr.2d 512]; *Reusche* v. *California Pac. Title Ins. Co.* (1965) 231 Cal.App.2d 731, 738 [42 Cal.Rptr. 262].) Here, for reasons which can only be imagined, the Beroukhims treated the Melameds as partners to the extent of allowing them to appear as partners in partnership tax returns and to continue to receive partnership draws. By doing this, the Beroukhims placed in the Melameds' hands the means of inducing Mercury to believe them to be partners.

Had it not been for BMB's affirmative conduct in representing David Melamed to be a partner in its 1982 and 1983 tax returns, it is possible

Mercury would not have loaned money to the Melameds. In any event, a triable issue of fact exists as to whether BMB's conduct reasonably justified Mercury's reliance upon the Melameds' claims of authority to execute the guarantee and trust deeds on behalf of the partnership. If it is established at trial that, under all of the facts Mercury was reasonably justified in such reliance, then, pursuant to section 15016 and Civil Code section 3543, BMB may be found liable on the guarantee, and its property may be found subject to the deeds of trust.[8]

## DISPOSITION

The alternative writ is discharged. A peremptory writ of mandate shall issue directing the trial court to vacate its order granting the motion for summary adjudication of the FDIC's first, third and fourth causes of action and BMB's first through fourth causes of action, and to enter a new and different order denying said motion. Our order of October 3, 1996, staying all proceedings in the trial court, shall be vacated upon the issuance of remittitur by this court. The FDIC shall recover its costs on this writ proceeding.

Klein, P. J., and Kitching, J., concurred.

---

[8]Obviously, among the issues to be resolved at trial are the extent of Mercury's actual or constructive knowledge as to the actual partnership status of the Melameds, and whether Mercury justifiably relied upon the documents presented to Mercury in deciding not to check the public records before making the loan.