[No. B143674. Second Dist., Div. Three. Feb. 28, 2002.]

CADVAN O. GRIFFITHS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MEDICAL BOARD OF CALIFORNIA, Real Party in Interest.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IV.C.

**COUNSEL**

Bonne, Bridges, Mueller, O'Keefe & Nichols and Peter R. Osinoff for Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, Carlos Ramirez, Assistant Attorney General, and Cindy M. Lopez, Deputy Attorney General, for Real Party in Interest.

## OPINION

## KITCHING, J.—

### I. INTRODUCTION

Business and Professions Code section 2239, subdivision (a)[1] provides that if a physician sustains two or more misdemeanor convictions involving the consumption of alcoholic beverages, those convictions constitute unprofessional conduct. We hold that a logical connection or nexus exists between the convictions and the physician's fitness to practice medicine, and therefore imposing discipline on a physician's license pursuant to section 2239, subdivision (a) does not violate the due process and equal protection clauses of the California and United States Constitutions. Section 2239, subdivision (a) also makes the record of the convictions involving alcohol consumption conclusive evidence of unprofessional conduct. We hold that because a rational connection exists between convictions involving alcohol consumption and a physician's fitness to practice medicine, the conclusive presumption of unprofessional conduct from those convictions does not violate the licensee's right to due process of law. We deny the physician-licensee's petition for writ of mandamus.

### II. FACTS AND PROCEDURAL HISTORY

*Accusation by the Medical Board of California*: In February 1994, the Medical Board of California (the Medical Board) filed an accusation against Cadvan O. Griffiths, M.D. (Griffiths), to whom the Medical Board had previously issued a physician's and surgeon's certificate. The Medical Board's accusation alleged violations of, inter alia, section 2239. The proposed penalty was revocation or suspension of Griffiths's certificate.

*The Administrative Law Judge's Proposed Decision:* After a hearing, an administrative law judge's proposed decision stated the facts underlying Griffiths's two prior convictions for reckless driving involving alcohol (Veh.

---

[1] Unless otherwise specified, statutes in this opinion will refer to the Business and Professional Code.

Code, § 23103) in 1987 and 1990 and a prior conviction in 1992 for driving with a blood-alcohol level greater than 1.0 (Veh. Code, § 23152, subd. (b)). The administrative law judge concluded that these convictions and the facts did not provide a basis for imposing discipline because no inherent nexus existed between driving under the influence and the practice of medicine. The administrative law judge concluded that cause to impose discipline on Griffiths's license did not exist, and dismissed the accusation.

*The Medical Board's Nonadoption of Proposed Decision:* The Medical Board issued a notice of nonadoption of the proposed decision and stated it would decide the case after the parties submitted written argument, including argument directed to whether the proposed penalty should be modified.

*The Medical Board's Decision and Factual Findings:* After the parties submitted written arguments, the Medical Board issued a decision containing factual findings,[2] which are summarized as follows.

Griffiths was issued a physician's and surgeon's certificate in December 1961, which remained in effect at all relevant times. He had no prior professional discipline. He pleaded nolo contendere to three charges involving driving and alcohol consumption.

*The April 24, 1987, Arrest:* Griffiths had consumed alcoholic beverages at two different locations before driving his car. A highway patrol officer observed other vehicles on the freeway brake and change lanes to avoid and to pass Griffiths's vehicle, which was traveling at about 40 miles per hour, slower than the other traffic. The officer also observed Griffiths's car weaving in and out of its lane. The officer had difficulty getting Griffiths's attention, but stopped Griffiths's car. Griffiths's gait was unsteady when he exited his car and his breath smelled of alcohol. Griffiths admitted having a few drinks at social engagements and then at a hotel. He told the officer he was driving fast because robbers were chasing him. The officer reminded Griffiths he had stopped him for driving too slowly and causing people to swerve to miss him. The officer explained and demonstrated field sobriety tests, but despite repeated opportunities, Griffiths could not perform the tests satisfactorily. The officer concluded Griffiths was under the influence of alcohol and told Griffiths he was under arrest. Formerly cooperative, Griffiths now became angry and uncooperative. The officer had to use his baton

---

[2]We conclude, *post*, that section 2239, subdivision (a) constitutionally makes the record of convictions for misdemeanors involving alcohol consumption conclusive evidence of unprofessional conduct. Nonetheless while prohibited from challenging the underlying convictions, a physician may request an examination of the facts and circumstances surrounding the commission of a crime in order to provide evidence of mitigation and to fix the degree of discipline. (*Leslie v. Board of Medical Quality Assurance* (1991) 234 Cal.App.3d 117, 120 [285 Cal.Rptr. 501].)

and needed the help of passing citizens to handcuff Griffiths. A breath test measured Griffiths's blood-alcohol level at above 0.11 percent. At the police station, Griffiths demonstrated extreme mood swings. The officer asked him if he was taking drugs other than alcohol. Griffiths answered he was taking an antihistamine for allergies, Tylenol with codeine for pain caused by injuries sustained in a robbery two weeks earlier, and Valium, a tranquilizer his doctor prescribed to control his blood pressure. It was not established that the medications were taken for illicit purposes.

On August 20, 1987, Griffiths pleaded nolo contendere to one count of violating Vehicle Code section 23103, reckless driving involving alcohol. The court suspended imposition of sentence, ordered Griffiths to pay a fine, and placed Griffiths on 36 months' probation, whose terms prohibited him from consuming an alcoholic beverage within 12 hours of driving and forbade his commission of a similar offense.

*The December 20, 1989, Arrest:* Griffiths drank some beer at a party at a bar, and then drove his car to pick up a nurse to care for his wife, who was ill. Two Los Angeles police officers observed Griffiths's car weaving back and forth from the curb to the center line, and pulled Griffiths over. Griffiths left his car voluntarily but was unsteady, had to hold the car door to keep his balance, and tripped getting onto the curb. His breath smelled of alcohol. Griffiths agreed to a field sobriety test, but according to one officer, failed the test miserably. The officers determined Griffiths was under the influence and arrested him. At the station, Griffiths chose to take a breath test but was unable to give two valid samples. He recalled being told the testing apparatus was broken. Griffiths unsuccessfully tried to give a urine sample. Griffiths agreed to a blood test, but told the doctor he had a bleeding problem. The doctor declined to draw blood. The Medical Board concluded Griffiths did not refuse to take a blood test.

On April 3, 1990, Griffiths pleaded nolo contendere to one count of violating Vehicle Code section 23103, reckless driving involving alcohol. The court suspended imposition of sentence, placed Griffiths on 36 months' summary probation, ordered Griffiths to pay a fine and to obey all laws, and prohibited Griffiths from operating a motor vehicle within 12 hours after drinking an alcoholic beverage.

*The November 24, 1991, Arrest:* Griffiths tried to find a drugstore to obtain medication for his wife. Los Angeles police officers observed Griffiths driving his car at high speed, weaving in and out of traffic, and attempted to stop Griffiths's vehicle. Griffiths did not immediately respond, but when he did stop he exited his car yelling, "Due process: I want due process."

Griffiths told the officers he was an attorney with the ACLU (American Civil Liberties Union) and had been set up because he had defended Rodney King. Griffiths had an unsteady gait, red eyes, slow speech, and an odor of alcohol. One officer began to explain and demonstrate the field sobriety tests, but Griffiths did not wait for the complete explanation, began to attempt the tests, and performed them incorrectly. The officers decided he was not cooperating and called for a supervisor. When the supervisor arrived, they again tried to administer the tests, but Griffiths could not perform them. Griffiths said he had not had anything to drink that evening, although the sauce on his dinner had alcohol in it and he had taken a Valium a couple of hours earlier. A breath test showed Griffiths's blood-alcohol level was at least 0.11 percent.

On March 24, 1992, Griffiths pleaded nolo contendere to one count of violating Vehicle Code section 23152, subdivision (b), driving with a blood alcohol greater than 1.0. The court sentenced Griffiths to 120 days in county jail and 60 months' probation, revoked his driver's license, and ordered Griffiths to pay a fine, obey all laws, refrain from alcohol use, and submit to random testing. The court allowed Griffiths to participate in the work release program, and required Griffiths to attend an alcohol and substance abuse program for 18 months and to attend 30 AA (Alcoholics Anonymous) meetings as a "monitor."

Since September 1989, Griffiths practiced medicine with his son in the same office. Griffiths's son and other office personnel testified that they never observed anything in Griffiths's office behavior indicating that he might be treating patients while he was under the influence of drugs or alcohol. An office policy prohibited the use of alcohol while working or on call. No evidence showed that Griffiths ever treated patients while he was affected by alcohol or drugs, and Griffiths testified that he had never done so.

The Medical Board concluded that Griffiths's three misdemeanor convictions involving use, consumption or self-administration of controlled substances and/or alcohol violated section 2239. Section 2239, subdivision (a) provides, in relevant part, that "more than one misdemeanor . . . involving the use, consumption, or self-administration of [alcoholic beverages] . . . constitutes unprofessional conduct. The record of the conviction is conclusive evidence of such unprofessional conduct." The Medical Board concluded that there was no need for a showing that Griffiths was impaired while practicing medicine.

As a factor in aggravation, the Medical Board found that Griffiths's second and third convictions occurred during his probation for earlier offenses.

The Medical Board found that cause existed to impose discipline on Griffiths's license under, inter alia, section 2239 for unprofessional conduct in connection with three convictions involving alcohol consumption.

The Medical Board ordered Griffiths's physician's and surgeon's certificate revoked, but stayed that revocation and placed Griffiths on three years' probation on six terms and conditions:

1. Proof of service of a copy of the Medical Board's decision on the chief of staff or chief executive officer at every hospital where Griffiths practices medicine or has hospital privileges or membership;

2. Psychiatric evaluation, testing, and treatment;

3. Medical evaluation and treatment;

4. Evaluation by and acceptance into the Division of Medical Quality's diversion program, if indicated by medical and psychiatric evaluations;

5. If not accepted into the diversion program, abstention from alcohol and from use of controlled substances, dangerous drugs, and prescriptions specified in the order, and submission to biological fluid testing on request of the division or its designee;

6. Submission to the division of a community service program in which Griffiths would provide free medical services on a regular basis to a community or charitable facility or agency for at least 60 hours during probation.

Griffiths filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) in Los Angeles County Superior Court. The petition asserted that the Medical Board violated due process of law by failing to find a substantial relationship between Griffiths's convictions and his duties, functions, and qualifications as a physician. It asserted that the evidence did not support the Medical Board's finding that cause existed to impose discipline on Griffiths's license, because no evidence showed that Griffiths ever treated patients while he was affected by alcohol or drugs or that he ever exhibited behavior indicating he might be treating patients while under the influence of drugs or alcohol. Griffiths's petition asserted that the Medical Board's order would penalize him without the requisite finding that the convictions were substantially related to his professional conduct, and thus abused the Medical Board's discretion and would cause irreparable harm to his ability to practice medicine.

The petition sought a writ of mandate ordering the Medical Board to set aside its decision and to issue a new order dismissing with prejudice the accusation against Griffiths.

The trial court denied Griffiths's petition. This court denied Griffiths's subsequent petition for writ of mandate. The California Supreme Court granted Griffiths's petition for review and ordered the matter transferred to this court with directions to vacate its order denying mandate and to issue an order directing respondent superior court to show cause why the relief the petition sought should not be granted.

This court vacated its order denying the petition and issued an order directing the parties to appear in court to show cause why the relief the petition requested should or should not be granted. The Medical Board has filed opposition to the petition for writ of mandate.

## III. ISSUES

Griffiths's petition contends that section 2239 is unconstitutional as applied to the facts of this case. Specifically, Griffiths claims:

1. Section 2239, subdivision (a) unconstitutionally fails to require a nexus between the conduct underlying the license discipline (Griffiths's misdemeanor convictions involving driving and alcohol consumption) and the licensee's fitness or competence to practice medicine;

2. By failing to include this "nexus" requirement, section 2239, subdivision (a) treats physicians differently than other license discipline statutes, and therefore denies him the equal protection of the law; and

3. The final sentence of section 2239, subdivision (a), making the record of misdemeanor convictions involving alcohol consumption conclusive evidence of unprofessional conduct, creates an unconstitutional irrebuttable presumption that deprived Griffiths of his due process rights.

The unpublished portion of this opinion addresses other issues.

## IV. DISCUSSION

### A. *Standard of Review*

Griffiths's petition for writ of administrative mandate challenged the Medical Board's discipline of his physician's and surgeon's certificate. ■ After an administrative agency imposes discipline on a professional licensee, the trial court to which application for mandate is made exercises its independent judgment on the facts. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143-146 [93 Cal.Rptr. 234, 481 P.2d 242]; *Hughes v. Board of Architectural*

*Examiners* (1998) 17 Cal.4th 763, 789 [72 Cal.Rptr.2d 624, 952 P.2d 641].) After the trial court exercises its independent judgment in reviewing the facts, the appellate court confines itself to determining whether substantial evidence supports the trial court's findings. The appellate court, however, independently exercises its ability to decide issues of law. (*Marek v. Board of Podiatric Medicine* (1993) 16 Cal.App.4th 1089, 1095-1096 [20 Cal.Rptr.2d 474].)

B. *Section 2239 and the Imposition of Discipline on Medical Licensees*

Griffiths challenges the Medical Board's decision insofar as it is based on section 2239. As relevant to this petition, section 2239 states:

"(a) The use . . . or administering to himself . . . of any controlled substance; or the use of any of the dangerous drugs specified in Section 4022, or of alcoholic beverages, to the extent, or in such a manner as to be dangerous or injurious to the licensee, or to any other person or to the public, or to the extent that such use impairs the ability of the licensee to practice medicine safely *or more than one misdemeanor* or any felony *involving the use, consumption, or self-administration of any of the substances referred to in this section*, or any combination thereof, *constitutes unprofessional conduct.* The record of the conviction is conclusive evidence of such unprofessional conduct.

"(b) A plea or verdict of guilty or a conviction following a plea of nolo contendere is deemed to be a conviction within the meaning of this section." (Italics added.)

▮ Administrative proceedings to revoke, suspend, or impose discipline on a professional license are noncriminal and nonpenal; they are not intended to punish the licensee, but rather to protect the public. (*Hughes v. Board of Architectural Examiners, supra,* 17 Cal.4th at pp. 785-786.) Regarding the imposition of discipline on a medical license, section 2229, subdivision (a) states: "Protection of the public shall be the highest priority for the Division of Medical Quality . . . and administrative law judges of the Medical Quality Hearing Panel in exercising their disciplinary authority."

The Medical Board, through its Division of Medical Quality, has authority to investigate, to commence disciplinary actions, and to take disciplinary action against a physician's license based on unprofessional conduct as defined in the Medical Practice Act. (§ 2000 et seq.; *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 7 [56 Cal.Rptr.2d 706, 923 P.2d 1].) This authority to determine a party's fitness to engage in a business or profession derives from

the state's inherent power to regulate the use of property to preserve the public health, morals, comfort, order, and safety. (*Arnett,* at p. 7; *Hughes v. Board of Architectural Examiners, supra,* 17 Cal.4th at p. 790.)

> C. *Griffiths's Claim of Error—That the Trial Court Erroneously Found He Used Valium and Codeine While Driving—Does Not Require Reversal**

. . . . . . . . . . . . . . . . . . . . . . . . . .

> D. *The Legislature Has Properly Determined That a Nexus or Logical Connection Exists Between Convictions Involving Consumption of Alcohol and a Licensee's Fitness and Competence to Practice Medicine*

Griffiths claims that imposing discipline on his medical license solely based on convictions involving alcohol use, where no facts showed that alcohol consumption affected his medical practice, violates the due process requirement that a nexus must exist between the conduct giving rise to the discipline and the physician's fitness or competence to practice medicine. We conclude that section 2239, subdivision (a) is constitutional.

> 1. *To Impose Discipline on a Medical Licensee, the Constitution Requires a Nexus Between the Professional Misconduct and the Physician's Fitness or Competence to Practice Medicine*

 "[A] statute constitutionally can prohibit an individual from practicing a lawful profession only for reasons related to his or her fitness or competence to practice that profession." (*Hughes v. Board of Architectural Examiners, supra,* 17 Cal.4th at p. 788.) Thus the state can impose discipline on a professional license only if the conduct upon which the discipline is based relates to the practice of the particular profession and thereby demonstrates an unfitness to practice such profession. "There must be a logical connection of licensees' conduct to their fitness or competence to practice the profession or to the qualifications, functions, or duties of the profession in question." (*Clare v. State Bd. of Accountancy* (1992) 10 Cal.App.4th 294, 302 [12 Cal.Rptr.2d 481].)

 Regarding the constitutionality of section 2239, "[a] presumption exists that in enacting a statute, the Legislature did not intend it to violate the Constitution, but instead intended to enact a valid statute within the scope of its constitutional powers. [Citations.] Therefore, we frequently have observed that a statute must be interpreted in a manner, consistent with the

---

*See footnote, *ante,* page 757.

statute's language and purpose, that eliminates doubts as to the statute's constitutionality." (*Hughes v. Board of Architectural Examiners, supra,* 17 Cal.4th 763, 788.) ▮ Where a licensing statute does not require a showing of a nexus between the licensee's conduct and the licensee's fitness or competence to practice, the statute must be read to include this "nexus" requirement to ensure its constitutionality. (*Marek v. Board of Podiatric Medicine, supra,* 16 Cal.App.4th at p. 1096.)

### 2. *More Than One Misdemeanor Conviction Involving Alcohol Consumption Has a Logical Connection to the Fitness to Practice Medicine*

▮ By defining more than one misdemeanor conviction involving alcohol consumption as unprofessional conduct in section 2239, subdivision (a), the Legislature has determined that a nexus exists between those convictions and a physician's fitness or competence to practice medicine. The issue is whether such convictions have a "logical connection" to a physician's fitness or competence to practice medicine. (*Clare v. State Bd. of Accountancy, supra,* 10 Cal.App.4th at p. 302.) We conclude that convictions involving alcohol consumption do have a logical connection to a physician's fitness to practice medicine and therefore section 2239, subdivision (a) is constitutionally valid.

Convictions involving alcohol consumption reflect a lack of sound professional and personal judgment that is relevant to a physician's fitness and competence to practice medicine. Alcohol consumption quickly affects normal driving ability, and driving under the influence of alcohol threatens personal safety and places the safety of the public in jeopardy. It further shows a disregard of medical knowledge concerning the effects of alcohol on vision, reaction time, motor skills, judgment, coordination and memory, and the ability to judge speed, dimensions, and distance. (See *Burg v. Municipal Court* (1983) 35 Cal.3d 257, 263, 267 [198 Cal.Rptr. 145, 673 P.2d 732].)

Driving while under the influence of alcohol also shows an inability or unwillingness to obey the legal prohibition against drinking and driving and constitutes a serious breach of a duty owed to society. Moreover, Griffiths's December 20, 1989, arrest violated his 36-month probation ordered on August 20, 1987, and Griffiths's November 24, 1991, arrest violated his 36-month probation ordered on April 3, 1990. Knowledge of such repeated conduct by a physician, and particularly of its propensity to endanger members of the public, tends to undermine public confidence in and respect for the medical profession. (See *In re Lesansky* (2001) 25 Cal.4th 11, 14-16 [104 Cal.Rptr.2d 409, 17 P.3d 764] [attorney may be disbarred for criminal

acts involving moral turpitude committed in a nonprofessional setting (i.e., not against clients or in the practice of law) when necessary to protect the public, promote confidence in the legal system, and maintain high professional standards].) Repeated convictions involving alcohol use, two of which violated Griffiths's probation, reflect poorly on Griffiths's common sense and professional judgment, which are essential to the practice of medicine, and tend to undermine public confidence in and respect for the medical profession.

As we have stated, Griffiths argues that the discipline based on section 2239, subdivision (a) was invalid because no evidence showed his alcohol use impaired his medical practice. Griffiths contends that private conduct having no effect on a physician's treatment of patients cannot be a basis for imposing discipline on a medical license. In relation to multiple convictions involving driving and alcohol consumption, we reject the argument that a physician can seal off or compartmentalize personal conduct so it does not affect the physician's professional practice. (See *Windham v. Board of Medical Quality Assurance* (1980) 104 Cal.App.3d 461, 470 [163 Cal.Rptr. 566].)

For a nexus to exist between the misconduct and the fitness or competence to practice medicine, it is not necessary for the misconduct forming the basis for discipline to have occurred in the actual practice of medicine. "[The Medical Board] is authorized to discipline physicians who have been convicted of criminal offenses not related to the quality of health care." (*Bryce v. Board of Medical Quality Assurance* (1986) 184 Cal.App.3d 1471, 1476 [229 Cal.Rptr. 483].)

Substantial legal authority provides that conduct occurring outside the practice of medicine may form the basis for imposing discipline on a license because such conduct reflects on a licensee's fitness and qualifications to practice medicine. (*Windham v. Board of Medical Quality Assurance, supra,* 104 Cal.App.3d at pp. 469-470 [income tax fraud reflects on physician's qualifications to practice medicine]; *Krain v. Medical Board* (1999) 71 Cal.App.4th 1416, 1424-1425 [84 Cal.Rptr.2d 586] [guilty plea to charge of felony soliciting subornation of perjury is substantially related to qualifications as physician]; *Matanky v. Board of Medical Examiners* (1978) 79 Cal.App.3d 293, 297-301 [144 Cal.Rptr. 826] [felony conviction for filing false, fraudulent insurance claims provides sufficient basis for license discipline].) A physician who commits income tax fraud, solicits the subornation of perjury, or files false, fraudulent insurance claims has not practiced medicine incompetently. Nonetheless that physician has shown dishonesty, poor character, a lack of integrity, and an inability or unwillingness to follow

the law, and thereby has demonstrated professional unfitness meriting license discipline. Although referring to a real estate license, the following quotation applies with even greater force to a medical license: "[T]here is more to being a licensed professional than mere knowledge and ability. Honesty and integrity are deeply and daily involved in various aspects of the practice." (*Golde v. Fox* (1979) 98 Cal.App.3d 167, 176 [159 Cal.Rptr. 864].)

Griffiths argues that he cannot be disciplined because no evidence showed his drinking and driving convictions resulted in any harm to patients. If accepted, this argument would have a serious implication for license discipline proceedings. In essence, it would prohibit the imposition of discipline on a licensee until harm to patients had already occurred. We reject this argument because it overlooks the preventative functions of license discipline, whose main purpose is protection of the public (*Bryce v. Board of Medical Quality Assurance, supra*, 184 Cal.App.3d at p. 1476), but whose purposes also include prevention of future harm (*In re Kelley* (1990) 52 Cal.3d 487, 496 [276 Cal.Rptr. 375, 801 P.2d 1126])[3] and the improvement and rehabilitation of the physician (*Windham v. Board of Medical Quality Assurance, supra*, 104 Cal.App.3d at p. 473). To prohibit license discipline until the physician-licensee harms a patient disregards these purposes; it is far more desirable to discipline *before* a licensee harms any patient than after harm has occurred.

*In re Kelley, supra,* 52 Cal.3d 487 relies on this premise and provides controlling authority in this case. In *Kelley,* an attorney was disciplined for professional misconduct consisting of two convictions for violating Vehicle Code section 23152, former subdivision (b) (driving with a blood-alcohol level exceeding 0.10 percent). The disciplined attorney called witnesses who testified that the attorney's misconduct did not harm clients or interfere with the attorney's legal practice. *Kelley* held that the lack of such adverse impact did not preclude the imposition of discipline. (52 Cal.3d at pp. 495-496.) Moreover, multiple drinking and driving convictions created a potential for harm to clients that warranted license discipline before actual harm to clients

---

[3] See also the administrative regulation setting forth criteria for the Division of Medical Quality of the Medical Board to determine whether a crime or act is substantially related to a licensee's qualifications, functions, or duties, which states: "For the purposes of denial, suspension or revocation of a license, certificate or permit pursuant to Division 1.5 (commencing with Section 475) of the [Business and Professions Code], a crime or act shall be considered to be substantially related to the qualifications, functions or duties of a person holding a license, certificate or permit under the Medical Practice Act if to a substantial degree it evidences *present or potential* unfitness of a person holding a license, certificate or permit to perform the functions authorized by the license, certificate or permit in a manner consistent with the public health, safety or welfare." (Cal. Code Regs, tit. 16, § 1360, italics added.)

occurred. The protection of the public, the primary purpose of licensing statutes, does not require harm to a client before licensing discipline can take place. "[R]epeated criminal conduct, and the circumstances surrounding it, are indications of alcohol abuse that is adversely affecting petitioner's private life. We cannot and should not sit back and wait until petitioner's alcohol abuse problem begins to affect her practice of law." (*Id.* at p. 495.)

Although *Kelley* involved an attorney, we believe its conclusion applies with equal or greater force to a physician's practice of medicine. Griffiths's three alcohol-related convictions are indications of alcohol abuse that affects his private life. We need not wait until his alcohol abuse problem begins to affect his practice of medicine.

Griffiths relies on *Weissbuch v. Board of Medical Examiners* (1974) 41 Cal.App.3d 924 [116 Cal.Rptr. 479], which stated that a physician is part of the "regulatory machinery" that governs narcotics and dangerous drugs. (*Id.* at p. 929.) This unique status justified a legislative classification that set doctors apart from other licensed professionals by providing for imposition of discipline on a medical license based on personal narcotics use without any showing that the conduct impaired the doctor's professional ability. Thus in *Weissbuch*, where a physician used a narcotic but there was no showing his drug use had any effect on his medical ability or his patients, the Court of Appeal held that a license discipline statute did not deny equal protection of the laws. (*Id.* at pp. 928-929.) Based on *Weissbuch*, Griffiths argues that a physician does not occupy any part of the "regulatory machinery" governing alcohol, that therefore the *Weissbuch* rule does not apply to Griffiths's case, and that without a showing of professional impairment, section 2239, subdivision (a) cannot form a constitutional basis for imposing discipline on his license.

The statutory analysis in *Weissbuch*, however, supports the validity of section 2239, subdivision (a) in this petition. The statute in *Weissbuch*, former section 2384, closely resembles section 2239, subdivision (a). Former section 2384 stated that a conviction of a violation of a statute regulating narcotics or dangerous drugs "constitutes unprofessional conduct within the meaning of this chapter. The record of the conviction or compromise is conclusive evidence of such unprofessional conduct." (*Weissbuch v. Board of Medical Examiners, supra,* 41 Cal.App.3d at p. 926, fn. 1.) *Weissbuch* addressed whether the Legislature could constitutionally provide for the imposition of discipline on a medical license based on a violation of narcotics laws without any showing that the conduct affected the physician's professional ability.

*Weissbuch* concluded that the Legislature presumptively legislated in a constitutional fashion, and had "determined that conviction of a doctor for a

violation of the laws regulating narcotics and dangerous drugs or a doctor's personal non-prescribed use of such substances evidences a sufficient danger to the public that sanctions should be imposed regardless of the availability of evidence that such conduct in fact impaired the doctor's professional skill. [¶] There is no basis, constitutional or otherwise, for the courts to override that legislative determination by imposing a special requirement of 'nexus' between the proscribed conduct and professional conduct." (*Weissbuch v. Board of Medical Examiners, supra,* 41 Cal.App.3d at p. 929.) In other words, if misconduct poses a sufficient danger to the public, the Legislature can define it as unprofessional conduct forming a basis for imposing discipline on the licensee without any additional showing that the misconduct impaired the actual practice of medicine.

Other authority similarly holds that a statute defining a criminal violation as unprofessional conduct can serve as the basis for the Medical Board's imposition of discipline of a physician. (*Matanky v. Board of Medical Examiners, supra,* 79 Cal.App.3d at p. 301; *Furnish v. Board of Medical Examiners* (1957) 149 Cal.App.2d 326, 330 [308 P.2d 924, 309 P.2d 493]; see also *Watkins v. Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 398-400 [6 Cal.Rptr. 191].)

Section 2239, subdivision (a), by defining convictions for use, consumption, or self-administration of alcoholic beverages as unprofessional conduct, therefore satisfies the constitutional requirement that a nexus exist between the disciplined conduct and the physician's fitness and competence to practice medicine without any additional showing that the convictions or the alcohol consumption impaired Griffiths's practice of medicine. (*Weissbuch v. Board of Medical Examiners, supra,* 41 Cal.App.3d at p. 929.) We therefore find no error in the trial court's reliance on section 2239, subdivision (a) as a ground for its decision.

E. *Section 2239, Subdivision (a) Does Not Deny Physicians Equal Protection of the Laws*

In a related argument, Griffiths claims that section 2239, subdivision (a) violates the right to equal protection of the laws. Griffiths argues that unlike other statutes providing for discipline of professional licenses, section 2239, subdivision (a) does not require that there be a substantial relationship between the alcohol-related misconduct and the physician's fitness or competence to practice, and therefore treats physicians differently than other health care professionals.

We have concluded, however, that section 2239 does contain a "nexus" requirement. Moreover, even if section 2239 did not require a nexus between

the licensee's conduct and the licensee's fitness or competence to practice, the statute must be read to include this "nexus" requirement to ensure its constitutionality. (*Marek v. Board of Podiatric Medicine, supra,* 16 Cal.App.4th at p. 1096.)

We therefore conclude that Griffiths has not established that section 2239 treats physicians differently from all other health care practitioners. ■ However, even if we proceed to subject section 2239, subdivision (a) to equal protection analysis, we conclude that this statute does not violate Griffiths's right to equal protection of the laws.

■ The equal protection clause requires the law to treat those similarly situated equally unless disparate treatment is justified. (*Landau v. Superior Court* (1998) 81 Cal.App.4th 191, 207 [97 Cal.Rptr.2d 657].) The "similarly situated" requirement means that an equal protection claim cannot succeed, and does not require further analysis, unless the claimant can show that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required to determine whether the distinction is justified. (*Guevara v. Superior Court* (1998) 62 Cal.App.4th 864, 872 [73 Cal.Rptr.2d 421].) Equal protection clauses in the Fourteenth Amendment to the United States Constitution and in the California Constitution (art. I, § 7, subd. (a), art. IV, § 16, subd. (a)) guarantee substantially similar rights and the courts analyze them in a similar fashion. (*Kenneally v. Medical Board* (1994) 27 Cal.App.4th 489, 495 [32 Cal.Rptr.2d 504].) In considering an equal protection challenge, this court first determines which of two standards of review applies, according to the classification in the challenged law and the interests it affects. (*Landau v. Superior Court, supra,* at p. 207.)

■ If a challenged law operates to the peculiar disadvantage of a suspect class or impinges on a fundamental right, this court subjects it to the severe standard of "strict scrutiny." Under strict scrutiny, a discriminatory law will not be given effect unless its classification bears a close relation to promoting a compelling state interest, the classification is necessary to achieve the government's goal, and the classification is narrowly drawn to achieve the goal by the least restrictive means. (*Landau v. Superior Court, supra,* 81 Cal.App.4th at p. 207; *Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 913 [13 Cal.Rptr.2d 245, 838 P.2d 1198].)

■ A medical license is a "fundamental" interest for purposes of receiving independent judicial review from a trial court after a disciplinary hearing, but it is not a "fundamental" interest that heightens the standard of review of an equal protection challenge to a medical license discipline

statute to "strict scrutiny." (*Landau v. Superior Court, supra,* 81 Cal.App.4th at pp. 209-210.) For purposes of equal protection analysis, the right to a professional license or to continue practice pursuant to that license does not constitute a fundamental interest. (*Id.* at p. 210.) Licensed physicians do not belong to a "suspect class." (*Kenneally v. Medical Board, supra,* 27 Cal.App.4th at p. 496.)

■ The second "rational basis" standard of review applies to most other legislation, such as economic regulation. The rational basis test asks whether the classification is rationally related to a legitimate governmental purpose. Put another way, the classification must bear some fair relationship to a legitimate public purpose. (*Landau v. Superior Court, supra,* 81 Cal.App.4th at p. 208.) Since a physician's right to practice his licensed profession is not a fundamental right for equal protection purposes, we apply the rational basis test to section 2239, subdivision (a), the statute Griffiths challenges.

■ The state has the power to regulate professions. The state may regulate different professions differently or it may resolve identical problems with respect to different professions in the same manner. This court pays great deference to legislative judgments about enforcing professional discipline. (*Kenneally v. Medical Board, supra,* 27 Cal.App.4th at p. 499.) Under the rational basis test, the courts will not overturn the Legislature's decision as to what is a sufficient distinction to warrant the classification unless it is " 'palpably arbitrary and beyond rational doubt erroneous. [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.' " (*In re Demergian* (1989) 48 Cal.3d 284, 292 [256 Cal.Rptr. 392, 768 P.2d 1069].) ■ We have determined that by defining more than one misdemeanor conviction involving alcohol consumption as "unprofessional conduct" in section 2239, subdivision (a), the Legislature has constitutionally found a nexus between the disciplined conduct and the physician's fitness and competence to practice medicine. This legislative definition of unprofessional conduct as a basis for imposing discipline on a license has the purpose of protecting the public. Imposing discipline on the license of a physician who sustains multiple misdemeanor convictions involving consumption of alcoholic beverages has a rational relationship to this legitimate governmental purpose.

We therefore conclude that section 2239 does not violate the right to equal protection of the laws.

F. *The Conclusive Presumption of Section 2239, Subdivision (a) Does Not Violate Griffiths's Right to Due Process of Law*

■ Griffiths claims that the final sentence of section 2239, subdivision (a) violates his right to due process of law. That sentence states: "The

record of the conviction is conclusive evidence of such unprofessional conduct." Griffiths argues that this conclusive presumption unconstitutionally usurps the judicial function by removing the issue of whether Griffiths's medical practice was impaired from the trier of fact, and thus creates a sham procedure that deprives licensees of due process of law in disciplinary actions.

The question is whether this presumption, by substituting the Legislature's judgment of what constitutes unprofessional conduct for a fact finder's judgment on this issue, violated Griffiths's right to due process of law.

A presumption is an assumption of one fact which the law requires to be drawn from another fact. It may be either conclusive or rebuttable. (Evid. Code, §§ 600, subd. (a), 601; *People v. Johnson* (1974) 38 Cal.App.3d 1, 8 [112 Cal.Rptr. 834].) "[O]nce foundational facts upon which such a presumption is based are established, the assumed fact may not be controverted by contrary evidence." (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 27 [84 Cal.Rptr.2d 715].) As such, a conclusive presumption is a rule of substantive law. (*People v. Dillon* (1983) 34 Cal.3d 441, 474 [194 Cal.Rptr. 390, 668 P.2d 697].) Its validity must therefore be judged under standards applicable to substantive laws. (*In re Heather B.* (1992) 9 Cal.App.4th 535, 560 [11 Cal.Rptr.2d 891].) The Legislature has power to create presumptions in civil cases. (*People v. Superior Court (Steven S.)* (1981) 119 Cal.App.3d 162, 175 [173 Cal.Rptr. 788, 22 A.L.R.4th 1140].) Conclusive presumptions exist to further particular social policies and purposes. (*Federal Deposit Ins. Corp. v. Superior Court* (1997) 54 Cal.App.4th 337, 346 [62 Cal.Rptr.2d 713].)

Griffiths relies on *People v. Gibson* (1988) 204 Cal.App.3d 1425 [252 Cal.Rptr. 56], which states that a conclusive presumption of one fact from proof of another violates the due process clause when the existence of the fact presumed is not universally or necessarily coexistent with the fact proved. (*Id.* at p. 1439.) *Gibson* derives this test from the United States Supreme Court's opinion in *Vlandis v. Kline* (1973) 412 U.S. 441 [93 S.Ct. 2230, 37 L.Ed.2d 63]. *Weinberger v. Salfi* (1975) 422 U.S. 749 [95 S.Ct. 2457, 45 L.Ed.2d 522], however, analyzes the validity of a conclusive presumption according to the right that presumption affects. As *Weinberger* explains, *Vlandis* does not provide the correct test of the conclusive presumption in section 2239, subdivision (a). *Weinberger v. Salfi, supra,* 422 U.S. 749 provides the test that applies in this petition.

*Vlandis* involved the validity of a Connecticut statute which determined how much tuition state university students would pay according to the

student's residence. The statute classified students as out-of-state residents if they lived outside the state when they applied for admission and declared these classifications permanent and irrebuttable for the whole time a student attended a state university. Out-of-state students paid higher tuition than Connecticut residents. *Vlandis* held that the due process clause of the Fourteenth Amendment prohibited a state statute from denying an individual the resident tuition rate based on an irrebuttable presumption of nonresidence, "when that presumption is not necessarily or universally true[,] in fact, and when the State has reasonable alternative means of making the crucial determination." (*Vlandis v. Kline, supra,* 412 U.S. at p. 452 [93 S.Ct. at p. 2236].)

In *Weinberger v. Salfi, supra,* 422 U.S. 749, the United States Supreme Court applied a different test. In *Weinberger,* the "duration of relationship" requirement in a federal statute denied Social Security benefits to applicants, a surviving spouse and stepchild, who had not been a deceased wage earner's spouse or stepchild for more than nine months preceding the wage earner's death. *Weinberger* stated that *Vlandis* did not control (*id.* at p. 771 [95 S.Ct. at pp. 2469-2470]), and based on the nature of the right affected, found that "duration of relationship" requirements did not violate the right to due process of law.

*Weinberger* distinguished *Vlandis* and related cases which relied on the test that to be valid, a statutory conclusive presumption must be necessarily or universally true. (*Weinberger v. Salfi, supra,* 422 U.S. at pp. 770-772 [95 S.Ct. at pp. 2469-2470].) *Weinberger* focused on the nature of the right: a statutory classification enacting an eligibility requirement for a social welfare benefit. Like statutes regulating the private economic sector, legislative decisions about social welfare legislation enjoy considerable latitude in using conclusive presumptions to define who receives public funds. A statute that classifies imprecisely—underinclusively by leaving out some members of the class that caused legislative concern or overinclusively by including some members in the class who are not in the factual position which generated the congressional concern—does not violate the due process clause. (*Id.* at pp. 777, 781 [95 S.Ct. at pp. 2472-2473, 2474-2475].) The question is whether the Legislature, "its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule." (*Id.* at p. 777 [95 S.Ct. at pp. 2472-2473].)

In *Weinberger,* the due process clause prohibited a Social Security classification only if the statute manifested a patently arbitrary classification

which utterly lacked rational justification. (*Weinberger v. Salfi, supra,* 422 U.S. at p. 768 [95 S.Ct. at p. 2468].) Because a "noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status" (*id.* at p. 772 [95 S.Ct. at p. 2470]), a statutory classification was consistent with Fifth Amendment due process requirements so long as it was " ' "rationally based and free from invidious discrimination." ' " (*Id.* at pp. 770 [95 S.Ct. at p. 2469].)

This test applies to economic regulation. (*Weinberger v. Salfi, supra,* 422 U.S. at pp 769-771 [95 S.Ct. at pp. 2469-2470].) Such economic regulation, under the state's police power, includes establishing standards for licensing practitioners and regulating the practice of professions. (*Goldfarb v. Virginia State Bar* (1975) 421 U.S. 773, 792 [95 S.Ct. 2004, 2015-2016, 44 L.Ed.2d 572].) As an economic regulation, a statute authorizing the imposition of discipline on a professional license only violates due process if it is irrational, arbitrary or unreasonable. A conclusive presumption in such a statute is therefore valid where a rational connection exists between the fact proved and the ultimate fact presumed. (*Homestead Savings v. Darmiento* (1991) 230 Cal.App.3d 424, 435 [281 Cal.Rptr. 367]; *County of San Diego v. Brown* (1978) 80 Cal.App.3d 297, 306 [145 Cal.Rptr. 483].)

 In terms of the presumption in section 2239, subdivision (a), the fact of multiple misdemeanor convictions involving consumption of alcoholic beverages has a rational relationship to the ultimate fact of unprofessional conduct that the presumption requires to be drawn. Such convictions reflect a personal problem involving alcohol consumption (*In re Kelley, supra,* 52 Cal.3d at p. 495), and it is not necessary to postpone the imposition of discipline until that personal problem affects the medical practice. Imposing discipline on a medical license based on this presumption furthers a particular social purpose: the protection of the public. It is not necessary to wait until a member of the public is harmed to take steps to prevent such harm from occurring. The Legislature has determined that multiple convictions involving alcohol consumption constitute a sufficient warning of possible or likely harm to the public and that these convictions justify the imposition of discipline on a medical license. Thus a rational connection exists between the convictions and the unprofessional conduct conclusively presumed in section 2239, subdivision (a). A statute creating a conclusive presumption may not be set aside on constitutional grounds if any basis reasonably justifies it. (*Paterson v. Department of Motor Vehicles* (1985) 171 Cal.App.3d 1126, 1130 [217 Cal.Rptr. 881].) We find no violation of due process.

## V. DISPOSITION

The petition is denied. Each party to bear their own costs in this proceeding.

The alternative writ is discharged.

Klein, P. J., and Croskey, J., concurred.

Petitioner's petition for review by the Supreme Court was denied June 12, 2002.