[No. C059957. Third Dist. Aug. 25, 2009.]

LOUIS H. WATSON, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
MEDICAL BOARD OF CALIFORNIA, Real Party in Interest.

1410

---

## Counsel

Alexander W. Kirkpatrick for Petitioner.

No appearance for Respondent.

Edmund G. Brown, Jr., Attorney General, Thomas S. Lazar and Harinder K. Kapur, Deputy Attorneys General, for Real Party in Interest.

## OPINION

HULL, J.—The Medical Board of California (Board) has authority to discipline a licensed physician for unprofessional conduct. (Bus. & Prof. Code, § 2227; further undesignated section references are to the Business and Professions Code.) Section 2239, subdivision (a) identifies as a form of unprofessional conduct the use of alcoholic beverages "to the extent, or in such a manner as to be dangerous or injurious to the licensee, or to any other person or to the public, *or* to the extent that such use impairs the ability of the licensee to practice medicine safely . . . ." (Italics added.) In this original mandamus proceeding, petitioner contends the italicized "or" in the foregoing statutory definition of unprofessional conduct must be read as "and" in order for section 2239 to pass constitutional muster. In other words, petitioner argues, the use of alcoholic beverages to the extent or in such a manner as to pose a danger to the physician or others may be the basis for professional discipline only if it is also proven there is a nexus between such use and the physician's ability to practice medicine safely.

We reject petitioner's attempt to rewrite section 2239. Although we agree there must be a nexus between the physician's use of alcoholic beverages and his or her fitness to practice medicine, we conclude such nexus has been established by the Legislature in all cases where a licensed physician used alcoholic beverages to the extent or in such a manner as to pose a danger to himself or others. We further conclude the imposition of discipline based on alcohol-related incidents that do not result in any criminal conviction does not violate the physician's due process rights. Because our conclusions are consistent with the decision of respondent Sacramento County Superior Court, we deny the instant petition.

### FACTS AND PROCEEDINGS

On September 1, 2004, David Thornton, in his capacity as executive director of the Board, filed an accusation against petitioner Louis H. Watson, M.D., alleging various instances of unprofessional conduct. As amended, the accusation alleged that on November 26, 2003, petitioner entered a negotiated plea of no contest to battery (Pen. Code, § 242), following an incident in which he hit another man in the back of the head in the parking lot of a home improvement store. Petitioner was placed on probation for one year. The accusation further alleged four incidents between

July 2000 and August 2005 in which petitioner was arrested for driving under the influence of alcohol (DUI) and four incidents in which petitioner provided false information on applications either for reappointment to hospital medical staffs or for professional liability insurance.

Following an administrative hearing, the Board found each of the alleged incidents had been established and provided cause for discipline. The Board revoked petitioner's certificate to practice medicine, but stayed the revocation and placed petitioner on probation for five years, with 30 days' actual suspension.

Petitioner filed a petition for writ of mandamus in the Sacramento County Superior Court challenging the Board's decision. That court granted the petition in part, concluding the Board erred in relying on the battery incident to support discipline, because that incident has no bearing on petitioner's qualifications to practice medicine. The court also concluded the Board incorrectly relied on alleged misstatements in one of the applications for professional liability insurance regarding prior convictions, inasmuch as the application was filed after petitioner's battery conviction had been expunged. Finally, the court struck a finding that petitioner suffers from substance abuse disorder and struck two conditions of probation prohibiting the use of alcohol and requiring testing of bodily fluids. In all other respects, the court denied the petition.

On September 23, 2008, petitioner initiated the instant mandamus proceeding challenging the decision of the superior court.

On review of an administrative decision imposing discipline on a professional licensee, the superior court exercises its independent judgment on the facts. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 789 [72 Cal.Rptr.2d 624, 952 P.2d 641].) "After a trial court's exercise of its independent judgment in review of the facts, an appellate court is limited to determining whether the trial court's findings are supported by substantial evidence but may, nonetheless, independently exercise its ability to decide issues of law." (*Marek v. Board of Podiatric Medicine* (1993) 16 Cal.App.4th 1089, 1095–1096 [20 Cal.Rptr.2d 474].)

Here, petitioner challenges the decision of the superior court but, in so doing, relies almost exclusively on the facts as found by that court. In effect, petitioner concedes substantial evidence supports the trial court's findings, challenging only the legal conclusions reached by the court. The Board, for

its part, relies on the various police reports of the DUI incidents, on which the trial court expressly relied. We therefore quote extensively from the superior court's recitation of the underlying facts. However, because the superior court rejected the battery incident as a proper basis for discipline, and that determination is not challenged here, we need not concern ourselves with that incident.

In connection with the four DUI incidents, the superior court found: "On the night of July 27, 2000, petitioner was stopped after police reported observing him driving erratically (making an improper left turn). Petitioner was arrested after the officers observed signs of intoxication, and petitioner performed poorly on several field sobriety tests. A subsequent breath test showed petitioner's alcohol level to be .08%. A misdemeanor complaint was filed against petitioner but was dismissed on November 15, 2000 pursuant to Penal Code section 1385.

"In the late afternoon or early evening of February 25, 2003, petitioner was stopped after he rear-ended a van at a stop light and the van's driver flagged down a patrol officer and reported petitioner as being intoxicated. Petitioner was arrested after the officer observed signs of intoxication, and petitioner performed poorly on some of the field sobriety tests. A subsequent blood test showed petitioner's alcohol level to be .06%, and no charges were filed.

"On the night of January 3, 2004, petitioner lost control of his car on the freeway, skidded and hit the center divider. He claimed that he had become anxious about a car following him too closely, and lost control when he tried to move out of the way. Petitioner's car suffered significant damage to the left front and rear areas, but was still operable. Petitioner drove his car off the freeway and to the hotel where he and his wife were staying. Police officers who happened to be there observed petitioner drive his damaged car into the parking lot, approached him, and reported observing signs of intoxication. Petitioner performed poorly on most of the field sobriety tests, and preliminary alcohol screening tests at the site reported alcohol levels of .087% and .081% . . . . Petitioner was arrested, and a subsequent breath test reported an alcohol level of .07%. No charges were filed as the result of this arrest.

"On August 20, 2005, police reported observing petitioner make a sudden lane change to exit the freeway, which caused other motorists to brake in order to avoid him. After stopping petitioner, the officers observed signs of intoxication. Petitioner performed poorly on field sobriety tests and was

arrested. Two subsequent breath tests recorded alcohol levels of .06%. At the time of the administrative hearing in this matter, a criminal matter was pending against petitioner in connection with this arrest. . . ."

Regarding the false applications, the superior court found: "[P]etitioner made misrepresentations on two applications for reappointment to medical staff positions and on two applications for professional liability insurance when he failed to disclose the Board's investigation and/or pending accusation in this matter and his criminal charges and convictions in response to questions asking about such matters."

DISCUSSION

I

*Introduction*

As we explain in the next part, conduct used as a basis for disciplining a professional licensee must demonstrate unfitness to practice the profession in question. This nexus requirement stems from constitutional due process principles.

Petitioner contends this matter raises the following issue of first impression: "[W]hether a physician properly may be subjected to professional license discipline for after-hours conduct that (a) does not result in conviction for any criminal offense, and (b) not only fails to demonstrate a nexus to professional competence or ability to practice with safety to the public, but is imposed in the face of an explicit judicial finding of a lack of nexus to competence or ability to practice with safety to the public."

Petitioner mischaracterizes the record in asserting the trial court made an express finding there is no nexus between the four alcohol-related incidents and his medical practice. Although not expressly stated, petitioner apparently relies on the following discussion in the trial court's decision: "Moreover, no evidence was presented of any improper conduct, impairment or other deleterious effects occurring within the context of petitioner's medical practice, i.e., the kind of 'red flags' that would be expected, under Dr. Leino's view, from a physician suffering from Substance Abuse Disorder. (Indeed, the only evidence of petitioner's conduct within the context of his medical practice was that petitioner never showed signs of being under the influence while acting as a physician and surgeon.)"

The foregoing discussion came in the context of the court's decision to discount the opinion of one of the Board's experts (Dr. Leino) that petitioner was suffering from substance abuse disorder. The court indicated if petitioner had been suffering from such condition, he would have shown signs of it at work. However, two percipient witnesses testified petitioner never showed signs of alcohol use while on duty. There was no contrary evidence presented.

The court's acknowledgement that petitioner never showed signs of being under the influence of alcohol at work does not amount to a finding of no nexus between the four alcohol-related incidents and petitioner's practice of medicine. In *Grannis v. Board of Medical Examiners* (1971) 19 Cal.App.3d 551 [96 Cal.Rptr. 863] (*Grannis*), a physician was disciplined for two counts of unprofessional conduct, one count based on two drunk driving convictions and the other based on the use of alcoholic beverages to the extent and in such a manner as to pose a danger to the physician or others. (*Id.* at pp. 554–555.) The Court of Appeal rejected the first count, because one of the convictions was based on a plea of nolo contendere and was later dismissed. (*Id.* at p. 558.) However, the court found the second count was sufficient to sustain the discipline.

On the question of whether there was a nexus between the misconduct and the practice of medicine, the court noted the Board expressly found Dr. Grannis " 'established that *at no time* had his alcoholism impaired his professional competency.' " (*Grannis, supra,* 19 Cal.App.3d at p. 563, fn. 13.) Nonetheless, other evidence in the record established Dr. Grannis was an alcoholic and his alcoholism had a *"direct relationship* to the quality of patient care that Dr. Grannis could give a patient if he had any alcohol whatsoever." (*Grannis, supra,* 19 Cal.App.3d at p. 563.) In other words, despite the fact there had been no impact on patient care, the potential for such impact provided the necessary nexus.

As we explain more fully in the following sections, the existence of a nexus does not require a finding of an actual adverse impact on the past day-to-day practice of medicine, but may be satisfied by a potential for such adverse impact in the future. Thus, the question presented here is whether, in order to support professional discipline, the Legislature may base a finding of unprofessional conduct on after-hours conduct, where (1) such conduct does not result in a criminal conviction, and (2) there is no express finding of a nexus between the conduct in question and the ability to practice medicine.

## II

### *The Nexus Requirement*

In order to satisfy constitutional due process, "[t]he state's power to regulate a profession cannot be used arbitrarily to penalize conduct having no demonstrable bearing upon fitness for its practice." (*Cartwright v. Board of Chiropractic Examiners* (1976) 16 Cal.3d 762, 767 [129 Cal.Rptr. 462, 548 P.2d 1134].) Thus, conduct used as a basis for revocation or suspension of a professional license must demonstrate unfitness to practice that profession. (*Ibid.*) As explained by the Supreme Court in *Yakov v. Board of Medical Examiners* (1968) 68 Cal.2d 67 [64 Cal.Rptr. 785, 435 P.2d 553] (*Yakov*): "The purpose of an action seeking revocation of a doctor's certificate is not to punish the doctor but rather to protect the public. [Citations.] While revocation of a certificate certainly works an unavoidable punitive effect, the board can seek to achieve a legitimate punitive purpose only through criminal prosecution. Thus, in this proceeding the inquiry must be limited to the effect of [the doctor's] actions upon the quality of his service to his patients." (*Id.* at p. 73, fn. 6.)

In *Morrison v. State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375] (*Morrison*), a public school teacher resigned after it became known he engaged in a homosexual relationship with another teacher. Thereafter the State Board of Education revoked his life diplomas pursuant to Education Code former section 13202, which authorized discipline for " 'immoral or unprofessional conduct.' " (*Morrison*, at p. 217, fn. 1; see also *id.* at pp. 218–220.) The Supreme Court concluded terms such as "immoral," "unprofessional," or "involving moral turpitude" are too broad and amorphous to be used as a basis for the termination of a professional license. Rather, it must be shown the conduct in question indicates an unfitness to engage in the profession.

The court explained: "Terms such as 'immoral or unprofessional conduct' or 'moral turpitude' stretch over so wide a range that they embrace an unlimited area of conduct. In using them the Legislature surely did not mean to endow the employing agency with the power to dismiss any employee whose personal, private conduct incurred its disapproval. Hence the courts have consistently related the terms to the issue of whether, when applied to the performance of the employee on the job, the employee has disqualified himself." (*Morrison, supra*, 1 Cal.3d at pp. 224–225.) The court concluded the State Board of Education could not abstractly characterize the conduct in the case as "immoral," "unprofessional," or "involving moral turpitude" within the meaning of Education Code former section 13202 unless that conduct indicated the petitioner was unfit to teach. (*Morrison*, at p. 230.)

## III

*Business and Professions Code Section 2239*

In the present matter, petitioner contends section 2239, like Education Code former section 13202, can be applied constitutionally only if interpreted to require a showing of a nexus between the after-hours use of alcoholic beverages and the ability to practice medicine.

Section 2239, subdivision (a) reads: "The use or prescribing for or administering to himself or herself, of any controlled substance; or the use of any of the dangerous drugs specified in Section 4022, *or of alcoholic beverages, to the extent, or in such a manner as to be dangerous or injurious to the licensee, or to any other person or to the public, or to the extent that such use impairs the ability of the licensee to practice medicine safely* or more than one misdemeanor or any felony involving the use, consumption, or self-administration of any of the substances referred to in this section, or any combination thereof, constitutes unprofessional conduct. The record of the conviction is conclusive evidence of such unprofessional conduct." (Italics & underscoring added.)

As noted earlier, petitioner contends we must read the underlined "or" in section 2239, subdivision (a) as "and" in order to satisfy the constitutional requirement of a nexus between after-hours conduct and the licensee's professional competence. In other words, petitioner argues, the Board must establish, by clear and convincing evidence (see *Ettinger v. Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 856 [185 Cal.Rptr. 601]), that a licensee's use of alcoholic beverages is both "to the extent, or in such a manner as to be dangerous or injurious to the licensee, or to any other person or to the public" and "to the extent that such use impairs the ability of the licensee to practice medicine safely" (§ 2239, subd. (a)).

██  The foregoing construction of section 2239, subdivision (a) would contravene the fundamental principles of statutory interpretation that require us to ascertain legislative intent (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406]), and to determine such intent from the words of the enactment, giving them their usual and ordinary meaning (*Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259]). If the Legislature had intended that the Board be required to prove both of the italicized clauses in section 2239, subdivision (a) in order to establish unprofessional conduct, it would not have written the statute in the disjunctive. In construing a statute, we give words their usual and ordinary meaning. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709,

715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) For this court to interpret the provision as petitioner suggests would require that we rewrite it in a way contrary to the Legislature's intent.

■ Petitioner nevertheless contends we *must* read the provision as he suggests in order for the statute to be found constitutional. He notes that an ambiguous provision must be construed, if possible, so as to uphold its constitutionality. (See *Metromedia, Inc. v. City of San Diego* (1982) 32 Cal.3d 180, 186 [185 Cal.Rptr. 260, 649 P.2d 902].) However, as we have indicated, there is nothing ambiguous in the language of section 2239, subdivision (a) at issue here. In the italicized language, the Legislature defined two distinct ways in which a licensee's use of alcoholic beverages may constitute unprofessional conduct. Thus, the question is not whether section 2239, subdivision (a) must be read to require proof of both parts of the italicized language, but whether, under constitutional principles, proof of the first part of the italicized language cannot be the basis for disciplinary action absent proof of the second part. It is that question we address in the next section.

IV

*Constitutionality of Section 2239, Subdivision (a)*

Petitioner contends section 2239, subdivision (a), as written, is unconstitutional, because it authorizes discipline for after-hours conduct without a showing of a nexus between the particular conduct in question and the ability to practice medicine. Petitioner acknowledges that two published decisions, *Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757 [117 Cal.Rptr.2d 445] (*Griffiths*) and *Weissbuch v. Board of Medical Examiners* (1974) 41 Cal.App.3d 924 [116 Cal.Rptr. 479] (*Weissbuch*), recognized the Board's power to impose discipline under such circumstances. Petitioner argues those cases are inapposite. As we shall explain, we find petitioner's attempts to distinguish *Griffiths* and *Weissbuch* unavailing.

In *Weissbuch*, disciplinary proceedings were commenced against a doctor under former sections 2384 and 2390 following his guilty plea to possession of marijuana. Former section 2384 defined as unprofessional conduct any violation of state law regulating narcotics or dangerous drugs; former section 2390, the predecessor of section 2239, identified the use of specified narcotics as unprofessional conduct. At the hearing before the medical board, the parties stipulated the doctor suffered the conviction and had used marijuana during a prior nine-month period. The board made findings consistent with the stipulations but further found the doctor's marijuana use had no effect on his medical ability or his patients' well-being. (*Weissbuch, supra*, 41 Cal.App.3d at pp. 926–927.)

The Court of Appeal concluded the discipline was improper under the circumstances, because recent legislation had taken marijuana outside the definition of narcotics or dangerous drugs and, therefore, undermined the basis for the discipline. Even though the doctor's marijuana use predated the legislative change, the court concluded he was entitled to the benefit of the new legislation. (*Weissbuch, supra*, 41 Cal.App.3d at p. 929.)

However, in reaching this conclusion, the court first considered the issue of "whether the Legislature may constitutionally provide for the disciplining of a licentiate in the medical profession on the basis of conduct involving the personal use of narcotics or on the basis of a violation of the laws regulating narcotics without any showing that the conduct affected the doctor's professional ability or amounted to moral turpitude." (*Weissbuch, supra*, 41 Cal.App.3d at p. 928.) The court concluded the Legislature could do so, explaining: "In his dealing with narcotics and dangerous drugs, there is more to be considered than just the doctor's ability to perform the skills required of his profession. He is, as we have said, a part of the regulatory machinery. . . . [¶] The Legislature which presumptively legislated in a constitutional fashion [citation], has determined that conviction of a doctor for a violation of the laws regulating narcotics and dangerous drugs or a doctor's personal non-prescribed use of such substances evidences a sufficient danger to the public that sanctions should be imposed regardless of the availability of evidence that such conduct in fact impaired the doctor's professional skill. [¶] There is no basis, constitutional or otherwise, for the courts to override that legislative determination by imposing a special requirement of 'nexus' between the proscribed conduct and professional conduct." (*Id.* at p. 929.)

In *Griffiths*, a physician was disciplined based on his pleas of nolo contendere to three charges involving reckless driving and alcohol consumption. The second and third convictions occurred while Griffiths was on probation for earlier violations. The evidence presented to the Board demonstrated Griffiths never treated patients while under the influence of drugs or alcohol. The Board nevertheless concluded cause existed to impose discipline for unprofessional conduct in connection with the three convictions (*Griffiths, supra*, 96 Cal.App.4th at pp. 763–766), and Griffiths's subsequent petition for writ of mandate was denied by the trial court (*id.* at p. 767).

In the Court of Appeal, Griffiths argued section 2239, subdivision (a) is unconstitutional to the extent it authorizes discipline without a showing of a nexus between the alleged misconduct in a particular case and the ability of the physician in question to practice medicine. The court acknowledged the nexus requirement, but concluded such nexus had been established by the Legislature, explaining: "By defining more than one misdemeanor conviction involving alcohol consumption as unprofessional conduct in section 2239,

subdivision (a), the Legislature has determined that a nexus exists between those convictions and a physician's fitness or competence to practice medicine. The issue is whether such convictions have a 'logical connection' to a physician's fitness or competence to practice medicine. [Citation.] We conclude that convictions involving alcohol consumption do have a logical connection to a physician's fitness to practice medicine and therefore section 2239, subdivision (a) is constitutionally valid.

"Convictions involving alcohol consumption reflect a lack of sound professional and personal judgment that is relevant to a physician's fitness and competence to practice medicine. Alcohol consumption quickly affects normal driving ability, and driving under the influence of alcohol threatens personal safety and places the safety of the public in jeopardy. It further shows a disregard of medical knowledge concerning the effects of alcohol on vision, reaction time, motor skills, judgment, coordination and memory, and the ability to judge speed, dimensions, and distance. [Citation.]

"Driving while under the influence of alcohol also shows an inability or unwillingness to obey the legal prohibition against drinking and driving and constitutes a serious breach of a duty owed to society. Moreover, Griffiths's December 20, 1989, arrest violated his 36-month probation ordered on August 20, 1987, and Griffiths's November 24, 1991, arrest violated his 36-month probation ordered on April 3, 1990. Knowledge of such repeated conduct by a physician, and particularly of its propensity to endanger members of the public, tends to undermine public confidence in and respect for the medical profession. [Citation.] Repeated convictions involving alcohol use, two of which violated Griffiths's probation, reflect poorly on Griffiths's common sense and professional judgment, which are essential to the practice of medicine, and tend to undermine public confidence in and respect for the medical profession." (*Griffiths, supra*, 96 Cal.App.4th at pp. 770–771.)

■ In *Griffiths*, the petitioner argued "that the discipline based on section 2239, subdivision (a) was invalid because no evidence showed his alcohol use impaired his medical practice. [Petitioner] contend[ed] that private conduct having no effect on a physician's treatment of patients cannot be a basis for imposing discipline on a medical license." (*Griffiths, supra*, 96 Cal.App.4th at p. 771.) In response, the court noted that, "[f]or a nexus to exist between the misconduct and the fitness or competence to practice medicine, it is not necessary for the misconduct forming the basis for discipline to have occurred in the actual practice of medicine." (*Ibid.*)

Finally, relying specifically on the analysis in *Weissbuch* regarding legislative power to define unprofessional conduct, the court concluded: "[I]f misconduct poses a sufficient danger to the public, the Legislature can define

it as unprofessional conduct forming a basis for imposing discipline on the licensee without any additional showing that the misconduct impaired the actual practice of medicine. [¶] . . . [¶] Section 2239, subdivision (a), by defining convictions for use, consumption, or self-administration of alcoholic beverages as unprofessional conduct, therefore satisfies the constitutional requirement that a nexus exist between the disciplined conduct and the physician's fitness and competence to practice medicine without any additional showing that the convictions or the alcohol consumption impaired Griffiths's practice of medicine." (*Griffiths, supra,* 96 Cal.App.4th at p. 774.)

■ Taken together, *Weissbuch* and *Griffiths* establish that, while there must be a nexus or "logical connection" between the type of misconduct that forms the basis for physician discipline and the ability of the physician to practice medicine, that nexus is established for constitutional purposes if the conduct enumerated, here the use of alcohol to the extent, or in such manner as to be dangerous or injurious to the licensee, or to any other person or to the public, is logically connected to a physician's fitness to practice medicine. *Weissbuch* concluded that a logical connection exists between a conviction for violating the laws regulating narcotics and dangerous drugs or the personal nonprescribed use of such substances and the ability to practice medicine. Likewise, *Griffiths* concluded that a logical connection exists between multiple convictions for misdemeanors involving the consumption of alcoholic beverages and the ability to practice medicine. We agree with both conclusions.

Petitioner contends the present matter is not controlled by *Weissbuch* or *Griffiths,* but by *Grannis, supra,* 19 Cal.App.3d 551. As noted earlier, *Grannis* involved discipline of a physician under former section 2390 for two counts of unprofessional conduct, one count based on two drunk driving convictions and the other based on the use of alcoholic beverages to the extent and in such a manner as to pose a danger to the physician or others. (*Grannis,* at pp. 554–555.) The Court of Appeal rejected the first count, because one of the convictions was based on a plea of nolo contendere and was later dismissed (*id.* at p. 558), but found there was sufficient evidence to support discipline on the second count.

On the requirement of a nexus between the misconduct and the practice of medicine, the Board argued a nexus finding is unnecessary where, as in former section 2390, and current section 2239, the Legislature has enumerated specific acts as unprofessional conduct. (*Grannis, supra,* 19 Cal.App.3d at p. 562.) The Court of Appeal disagreed, explaining the principle underlying *Morrison* and *Yakov,* that a professional licensee cannot be disciplined for off-duty conduct unless that conduct renders him or her unfit to practice his profession, is not limited to statutes using general misconduct language such

as "immoral" or "unprofessional" conduct, but applies as well to specific statutes such as former section 2390. (19 Cal.App.3d at p. 562.)

The *Grannis* court held that the second clause of former section 2390, which defined as unprofessional conduct the use of alcoholic beverages to the extent, or in such manner as to be dangerous or injurious to the licensee, to any other person or to the public "is a proper exercise of the police power that *can be constitutionally* applied to Dr. Grannis." (*Grannis, supra*, 19 Cal.App.3d at p. 562, fn. omitted.)

Petitioner relies on *Grannis* here because the *Grannis* court then went on to decide whether there was evidence in the record sufficient to show that, in fact, Dr. Grannis's use of alcoholic beverages was dangerous to the public, and concluded that there was.

As can be seen, the difference between *Griffiths* and *Weissbuch* on the one hand and *Grannis* on the other is that the former cases find that there is a sufficient nexus for discipline if there is a logical connection, in the abstract, between the statutory basis for the discipline and the physician's fitness to practice medicine, while the latter case looked specifically for evidence that Dr. Grannis's use of alcoholic beverages "had any effect on his professional service to the public." (*Grannis, supra*, 19 Cal.App.3d at p. 563.)

We find *Grannis* unpersuasive for a number of reasons. The decision appears to be internally inconsistent. On the one hand, the court rejected the Board's argument that a nexus finding is unnecessary where, as in former section 2390, the Legislature has enumerated specific acts as unprofessional conduct. On the other hand, the court went on to say the language of former section 2390, "denotes conduct of a physician which indicates unfitness to practice his profession." (*Grannis, supra*, 19 Cal.App.3d at p. 562.) In other words, proof that the physician used alcoholic beverages to the extent or in such manner as to be dangerous or injurious to himself or others would be sufficient to establish unfitness to practice medicine. Nevertheless, the court went on to analyze whether the physician's conduct in fact demonstrated his unfitness to practice medicine. (*Id.* at p. 563.)

At any rate, beyond merely rejecting the Board's argument that the Legislature's enumeration of specific acts of unprofessional conduct in former section 2390 satisfied the nexus requirement, *Grannis* contains no analysis of why such legislative enumeration is necessarily inadequate. This may be explained by the fact the court was not required to address the issue, inasmuch as it found sufficient evidence to establish a nexus independent of the legislative determination.

By contrast, as described above, *Weissbuch* and *Griffiths* contain extensive discussions of the significance and effect of a legislative enumeration of the

grounds for a finding of unprofessional conduct. Both cases explain why the use of dangerous drugs or the use of alcoholic beverages to the extent or in such manner as to create a danger to the licensee or others renders him or her unfit to practice medicine, notwithstanding a lack of evidence of any actual, past impact.

We turn then to petitioner's argument that the fact that he did not have a conviction for driving under the influence of alcohol takes him beyond the reach of *Griffiths* and *Weissbuch*.

■ Section 2239, subdivision (a) defines several types of unprofessional conduct, to wit: (1) "[t]he use or prescribing for or administering to himself or herself, of any controlled substance"; (2) "the use of any of the dangerous drugs specified in Section 4022"; (3) the use of alcoholic beverages "to the extent, or in such a manner as to be dangerous or injurious to the licensee, or to any other person or to the public"; (4) the use of alcoholic beverages "to the extent that such use impairs the ability of the licensee to practice medicine safely"; and (5) more than one misdemeanor or any felony "involving the use, consumption, or self-administration of any of the substances referred to in this section, or any combination thereof." (§ 2239, subd. (a).)

*Weissbuch* involved both a conviction for using dangerous drugs and the use of dangerous drugs as defined in former sections 2384 and 2390. *Griffiths* involved the fifth category of unprofessional conduct under section 2239, subdivision (a), as described above. The present matter involves the third category of unprofessional conduct under section 2239, subdivision (a). Petitioner apparently contends this category, in order to be constitutionally sufficient to serve as the basis for discipline, must be based on a criminal conviction for alcohol-related misconduct. He appears to argue that a criminal conviction alone provides the degree of certainty necessary to show misconduct. We disagree and note, in passing, that one of the categories at issue in *Weissbuch* also did not involve a criminal conviction, yet the court had no trouble finding it was a proper basis for discipline.

Petitioner repeatedly asserts the trial court's finding of unprofessional conduct is based on "mere arrests" for "suspicion of driving under the influence of alcohol." However, this mischaracterizes the record. In its decision, the trial court made express findings that "[t]he weight of the evidence establishes that petitioner was under the influence of alcohol at the time he was driving, and that as a result, petitioner drove in a manner that posed a hazard to himself and others." Petitioner does not challenge these findings. Thus, this matter does not involve discipline based on "arrests" for "suspicion" of driving under the influence. Petitioner's discipline is based on four separate incidents in which he did, in fact, drive an automobile while

under the influence of alcoholic beverages under circumstances that posed a danger to himself and others.

■ As explained by the court in *Griffiths*, driving while under the influence of alcohol demonstrates an inability or unwillingness to obey legal prohibitions against such conduct and constitutes a serious breach of a duty owed to society. (*Griffiths, supra*, 96 Cal.App.4th at p. 770.) "Knowledge of such repeated conduct by a physician, and particularly of its propensity to endanger members of the public, tends to undermine public confidence in and respect for the medical profession." (*Ibid.*) Such conduct reflects poorly on the physician's "common sense and professional judgment, which are essential to the practice of medicine, and tend[s] to undermine public confidence in and respect for the medical profession." (*Id.* at p. 771.)

Petitioner contends basing professional discipline on conduct that does not give rise to a criminal conviction violates principles of due process, because the licensee is not given adequate notice of the prohibited conduct. Petitioner argues he did not have adequate advance notice of "how much alcohol consumption prior to driving, or which conduct involving suspicion of driving under the influence of alcohol would give rise to disciplinary cause against the licensee." According to petitioner, while convictions provide a bright line as to what conduct is prohibited, "there is no lower level of alcohol consumption or suspicion of driving under the influence of alcohol that would not trigger the ability of the Medical Board to proceed."

■ We are not persuaded. A statute must be sufficiently clear to give fair warning of the conduct it prohibits. (*Shea v. Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 574 [146 Cal.Rptr. 653].) Section 2239, subdivision (a) authorizes discipline of a physician for the use of alcoholic beverages "to the extent, or in such a manner as to be dangerous or injurious to the licensee, or to any other person or to the public." (§ 2239, subd. (a).) Although this language does not provide a bright-line standard, it does restrict the conduct that may give rise to disciplinary action. Discipline is authorized only where the use of alcoholic beverages is "to the extent" or "in such a manner" as to pose a danger to the physician or others. Furthermore, there can be no doubt petitioner's driving after consuming alcoholic beverages on the four occasions at issue here posed a danger to himself and others. On two occasions petitioner was involved in a crash and in each instance he drove recklessly. The trial court so found, and petitioner does not challenge those factual findings. We therefore conclude petitioner was not denied due process by virtue of the application of section 2239, subdivision (a) under the circumstances of this case.

## DISPOSITION

The petition for writ of mandate is denied. Real party in interest shall receive its costs on appeal.

Blease, Acting P. J., and Robie, J., concurred.

Petitioner's petition for review by the Supreme Court was denied December 2, 2009, S176851.