Filed 11/16/17 (unmodified opn. attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GRACE LORRAINE WALKER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PHYSICAL THERAPY BOARD OF CALIFORNIA,<br><br>    Defendant and Respondent. | D071984<br><br><br><br> (Super. Ct. No. 30-2015-00769721)<br><br>ORDER MODIFYING THE OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in this case filed October 16, 2017, and certified for publication on November 8, 2017, is modified as follows:

In the last sentence of the first paragraph on Page two, the number 2260 is changed to 2660 so that the sentence now reads:

"We conclude sections 2239 and 2660 did permit the Board to impose discipline in this context and affirm the judgment."

There is no change in the judgment.

HALLER, Acting P. J.

Copies to:  All parties

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GRACE LORRAINE WALKER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PHYSICAL THERAPY BOARD OF CALIFORNIA,<br><br>    Defendant and Respondent. | D071984<br><br><br><br>(Super. Ct. No. 30-2015-00769721) |

APPEAL from a judgment of the Superior Court of Orange County, Peter J. Wilson, Judge.  Affirmed.

Law Offices of Marjorie G. Fuller and Marjorie G. Fuller for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Gloria Castro, Assistant Attorney General, Matthew M. Davis and Tessa L. Heunis, Deputy Attorneys General, for Defendant and Respondent.

Grace Lorraine Walker appeals from a judgment of the superior court denying her petition for a writ of administrative mandamus.  The petition asked the court to set aside a

decision of the Physical Therapy Board of California (the "Board") that subjected Walker to discipline based on a misdemeanor hit-and-run conviction and the Board's finding she had used alcohol in a manner dangerous to herself or others. The superior court concluded the misdemeanor conviction was not an appropriate ground for discipline because it was not sufficiently related to Walker's fitness to practice physical therapy, but that discipline was appropriate pursuant to Business and Professions Code[1] sections 2239 and 2660 based on Walker's use of alcohol in a dangerous manner. On appeal, Walker argues the court erred because the statutes do not permit discipline of a physical therapist based on a single isolated instance of alcohol use in a dangerous manner without a specific finding of a nexus between the conduct at issue and the fitness of the individual to practice physical therapy. We conclude sections 2239 and 2260 did permit the Board to impose discipline in this context and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Walker became a licensed physical therapist in the state of California in 1978. Between 1978 and 2011, she remained in good standing with the Board, was never subject to discipline, and received only one citation, which related to a billing issue. During that time, she also had no history of alcohol related offenses or complaints.

---

[1] All further statutory references are to the Business and Professions Code unless otherwise noted.

*The Collision and Criminal Proceedings*

On the evening of January 1, 2011, around 6:00 p.m. Walker left her home in a gated residential community and drove while under the influence of alcohol to pick up dinner at a nearby restaurant. As Walker navigated the narrow streets of the community, she "nicked" a parked car. She backed up to check for damage and hit a second parked car, breaking the tail light of that car and denting the bumper of her own car. She got out of her car to assess the damage and recognized the second car as belonging to a neighbor that was out of town attending a football game. Norma Carmona and her husband, who had been walking down the street when the collision occurred, saw Walker stumble as she exited her vehicle. Carmona asked if Walker was okay, but Walker did not respond and instead got back into her car and drove away.

Carmona went to a nearby house and knocked on the door to report the collision. The homeowner, Patricia Thompson, was having a dinner party and some of the guests went outside to check their cars for damage. Thompson telephoned the gatehouse for the community and informed the security guard that someone had hit a parked car and then left the scene. Shortly thereafter, at 6:41 p.m., Thompson also reported the collision to the Newport Beach Police Department.

Meanwhile, Walker continued on to the restaurant to pick up her dinner. She ordered a glass of wine and, while waiting for her food, the restaurant gave her a complimentary eggroll and refilled her wine. After finishing the second glass of wine and eggroll, Walker left with her food. When she returned home, her husband was not ready for dinner so Walker took the food to the kitchen.

3

At 7:38 p.m., Newport Beach Police Officer Sarris arrived at Walker's residence. Officer Sarris noted Walker smelled of alcohol, was unsteady on her feet, and had red, watery eyes. Based on these observations, he called for a DUI enforcement officer to evaluate Walker. He then examined Walker's vehicle and took photos of the damage.

Officer Miller, the DUI enforcement officer, arrived at Walker's home at 7:52 p.m. He also noted Walker was unsteady, had red, watery eyes and droopy eyelids, and that she emitted a strong odor of alcohol. He asked if she had consumed any alcohol and she stated she had one glass of wine one hour ago at the restaurant. He asked her twice if she had drunk any alcohol since returning home from the restaurant and she said "no" both times. She said she had eaten at the restaurant but had not eaten the food she brought home yet. After conducting a number of sobriety tests, Officer Miller determined Walker was under the influence of alcohol and arrested her. She agreed to take a breathalyzer test following the arrest, and her blood alcohol content (BAC) measured .19 percent at 8:24 p.m. and .20 percent at 8:28 p.m.

Walker was charged with one count of driving under the influence of alcohol in violation of Vehicle Code section 23152, subdivision (a); one count of driving with blood alcohol of 0.08 percent or more in violation of Vehicle Code section 23152, subdivision (b); and one count of hit and run with property damage in violation of Vehicle Code section 20002, subdivision (a). In June 2012, Walker pled guilty to misdemeanor count of hit and run and, in exchange, the two alcohol related charges were dismissed.

4

*Board Proceedings*

A few months later, in October 2012, the Board served an accusation on Walker, seeking to revoke or suspend her physical therapy license based on the January 2011 collision and resulting conviction. The accusation contained four causes of action: (1) conviction of a crime substantially related to the qualifications, functions or duties of a physical therapist; (2) use of alcohol in a dangerous manner; (3) violation of provisions of the Physical Therapy Practice Act based on the allegation in (1); and (4) violation of the Medical Practice Act based on the allegations in (2).

Walker denied the charges and Administrative Law Judge Boyle held a 4-day hearing in the matter in June 2014. Walker testified that she had not had any alcohol before leaving the house to pick up dinner on the evening of the collision but that she had accidentally struck her head on her husband's desk shortly before leaving the house. She recalled hitting the parked car but did not see any damage when she got out to check and, knowing the owner was out of town, she planned to contact him when he got back. She testified that she drank approximately one and three-quarters glasses of wine at the restaurant while waiting for her food. She further testified that when she arrived home after picking up the food, she made herself a drink of two different types of flavored vodka, totaling approximately six ounces of seventy and eighty proof alcohol, and drank the entire glass in the 35 to 45 minutes before the police arrived. This was the first and only time she had drunk flavored vodkas and she had bought the vodka earlier that week based on a recent recommendation for the drink.

Walker's husband testified he was working in his home office most of the day and did not know whether Walker drank any alcohol before or after she went to pick up dinner. He also stated he had never seen Walker drink alcohol before work. In addition, a physical therapy aid that worked at Walker's practice testified Walker was professional and respectful with her patients, had never acted impaired or impacted by alcohol at work, and had never drank alcohol at office events, even after-hours celebrations.

Two forensic experts testified, one for Walker and one for the Board. Erin Nixt, a forensic scientist employed by the Orange County Sheriff-Coroner's Department, testified the maximum BAC for a woman of Walker's weight after 2.5 standard drinks would be .067 percent. Based on the breathalyzer test conducted on Walker the evening of the collision, Nixt opined Walker had consumed 6.5 to 7.5 standard drinks that evening and her BAC when she was driving at 6:40 p.m. was approximately .21 to .22 percent. In light of Walker's testimony that she drank only after the accident, Nixt opined Walker would have had to drink 4.5 to 8 standard drinks between 6:40 and 7:36 p.m. to have a BAC of 0.19 at 8:20 p.m. A forensic expert hired by Walker opined that if Walker drank 7 ounces of wine at the restaurant between 6:00 and 7:00 p.m. followed by 6 ounces of vodka between 7:10 and 7:38, she would have had a BAC of only 0.04 percent when she drove home and would have been at her peak BAC when she was tested at 8:24 p.m.

In a proposed decision, the administrative law judge found the evidence did not support a finding that Walker had an ongoing alcohol dependency problem or that there were any related deficiencies in her practice. The decision concluded, however, that Walker was nevertheless subject to discipline based on the hit and run conviction and her

6

use of alcohol in a dangerous manner on January 1, 2011.  The Board declined to adopt the proposed decision and, after reviewing the transcripts from the hearing and additional briefing by the parties, the Board issued its own decision.

The Board found the evidence suggested Walker was impaired when she left her home on the evening of January 1, 2011 and hit at least two parked cars.  The Board noted Walker admitted to drinking two glasses of wine at the restaurant and thus found it troubling that she then drove with even more alcohol in her system after the accident.  It also found Walker's testimony at the hearing that she drank 6 to 7 ounces of vodka at home just before the police arrived was replete with inconsistencies and likely a fabrication, calling into question her truthfulness and credibility.  Ultimately, the Board concluded clear and convincing evidence supported a finding that Walker was driving while under the influence of alcohol when she caused the collision and expressed concern that she had failed to accept responsibility for her conduct.

The Board therefore determined cause existed to discipline Walker pursuant to former section 2660, subdivision (d) because she had been convicted of a crime substantially related to her qualifications, functions, or duties as a physical therapist; and pursuant to former section 2660, subdivision (h)[2] and section 2239 because she used alcohol in a manner or to an extent as to be dangerous to herself, to another person or to

_____

[2]     The accusation and decision after nonadoption refer to former section 2660, subdivision (h) with respect to the second and fourth counts, which is similar to current section 2660, subdivision (a).  (See Stats. 2013, ch. 389, §§ 54, 3640-3643 [reordering subdivisions]; § 2660, subd. (a).)  There is no dispute the Board based its decision in this regard on an alleged violation of section 2239, part of the Medical Practice Act, or that section 2660 has, at all relevant times, permitted discipline based on such a violation.

7

the public. The Board revoked Walker's license but stayed the revocation and placed Walker on probation for a period of two years or one year after the successful completion of a drug and alcohol recovery monitory program, whichever was later. The Board required Walker to obtain a clinical diagnostic evaluation regarding substance abuse within 15 days and stated that there would be no further requirements under the alcohol provisions of her probation if the evaluation determined Walker did not have a substance abuse problem.

*Petition for Writ of Mandamus*

Walker filed a petition for a writ of mandamus in the superior court, asking the court to direct the Board to set aside its decision and dismiss the accusation against her. Following briefing and argument by the parties, the superior court determined the misdemeanor hit and run conviction was not sufficiently related to Walker's qualifications, functions or duties as a physical therapist to warrant discipline under former section 2660, subdivision (d), but that the evidence supported a finding Walker used alcohol in a dangerous manner on January 1, 2011, and that former section 2660, subdivision (h) allowed the Board to impose discipline based on that finding. The court thus concluded the Board had not abused its discretion by disciplining Walker, and therefore denied the writ petition and entered judgment in favor of the Board.

Walker appeals.

DISCUSSION

Walker asserts the court erred in denying her writ petition because it incorrectly interpreted the governing statutes when it concluded a single isolated use of alcohol in a dangerous manner was sufficient to permit the Board to impose discipline without making a separate finding that the conduct substantially affected her professional practice.

*I. Failure to Exhaust Administrative Remedies*

The Board asserts Walker waived the assertion an isolated incidence of alcohol use cannot support the imposition of discipline by failing to raise it at the administrative hearing or in her writ petition. We disagree.

The principle of administrative exhaustion requires a litigant to present all arguments to the administrative body, and thus providing the body a full opportunity to address and respond to each argument, before raising them on appeal. (See *Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 874.) Here, Walker has consistently argued, both to the Board and in connection with its petition for writ of mandamus in the superior court, that section 2239 requires more than an isolated instance of improper alcohol use. For example, in her written arguments to the Board, submitted in October 2014, Walker asserted reading section 2239 in the context of the constitutional nexus requirement, the dangerous use of alcohol referenced therein "must be more than a single isolated instance." Although Walker's arguments have evolved over time, in part based on the decisions put forth by the Board and the superior court, her fundamental arguments have remained the same. Moreover, to the extent Walker's assertions on

9

appeal deviate from her assertions below, this court has the discretion to consider new arguments so long as they relate to the application of law to undisputed facts. (*Canister v. Emergency Ambulance Services* (2008) 160 Cal.App.4th 388, 396.)

We therefore conclude Walker has not waived any asserted argument, and address the merits of her contentions.

## II. The Statutes Permitted the Board to Impose Discipline

### A. Standard of Review

When considering a petition for a writ of mandamus arising from an administrative decision that imposes discipline on a professional licensee, the trial court reviews the entire record and exercises its independent judgment regarding the facts. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 789.) On appeal from the trial court's judgment on the writ petition, an appellate court gives the trial court's decision the same effect as any other judgment. (*Green v. Board of Dental Examiners* (1996) 47 Cal.App.4th 786, 796 (*Green*).) We review the trial court's factual findings for substantial evidence and independently determine issues of law pursuant to a de novo standard of review. (*Ibid.*; *Marek v. Board of Podiatric Medicine* (1993) 16 Cal.App.4th 1089, 1095–1096 (*Marek*).)

Here, the trial court reviewed the administrative record and found that the Board's factual findings were supported by the weight of the evidence, and the parties do not dispute the trial court's findings in that regard on appeal. In her briefing, Walker specifically states that "she does not argue on appeal the factual findings are in error" and that, although she disagrees with certain findings, she "understands the presumption of

10

correctness of factual findings, and has chosen not to challenge those findings on appeal." Instead, Walker's argument on appeal is limited to a question of statutory interpretation; specifically, she contends that the trial court's finding that she used alcohol in a dangerous manner is not sufficient to support discipline under the relevant statutes absent a separate factual finding that her conduct substantially affected her ability to practice her profession.

As neither party asserts the factual findings of the trial court were not supported by substantial evidence, this court need not review those findings. Instead, our review is limited to the question of whether the relevant statutes permit the imposition of discipline based on the trial court's findings, if accepted as true. That is a question of law that we independently review. (*Green, supra,* 47 Cal.App.4th at p. 796; *Marek, supra,* 16 Cal.App.4th at pp. 1095-1096; see also *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799-801 [questions of law, including statutory interpretation, are subject to de novo review].)

B. *Legal Principles and Statutes Concerning Discipline Based on Alcohol Use*

Every person has a right to practice the profession of his or her choosing and arbitrary restrictions of that right violate an individual's constitutional right to due process. (*Cartwright v. Board of Chiropractic Examiners* (1976) 16 Cal.3d 762, 767; *Emslie v. State Bar* (1974) 11 Cal.3d 210, 226.) Revocation or suspension of a professional license therefore requires a finding of some nexus between the conduct at issue and the fitness of the individual to practice that profession. (*Ibid.*) At the same time however, the nexus between the misconduct and discipline need not relate to an actual adverse impact on the individual's day-to-day professional practice, but may

11

instead derive from a potential for future adverse impacts. (*Watson v. Superior Court* (2009) 176 Cal.App.4th 1407, 1415 (*Watson*).)

Of particular relevance here, the Legislature has determined that a physical therapist's use of alcohol to the extent or in such a manner as to pose a danger to the therapist or to others is unprofessional conduct substantially related to the qualifications, functions or duties of the therapist, and thus an appropriate basis for discipline. Section 2239, subdivision (a) is part of the Medical Practice Act and states: "[T]he use of any of the dangerous drugs specified in [s]ection 4022, or of alcoholic beverages, to the extent, or in such a manner as to be dangerous or injurious to the licensee, or to any other person or to the public, or to the extent that such use impairs the ability of the licensee to practice medicine safely or more than one misdemeanor or any felony involving the use, consumption, or self-administration of any of the substances referred to in this section, or any combination thereof, constitutes unprofessional conduct." (See also § 2000 [defining the Medical Practice Act]; *Watson, supra,* 176 Cal.App.4th at pp. 1419-1420 [finding section 2239, subdivision (a) constitutionally valid].)

Both the Board and the Legislature have applied this provision of the Medical Practice Act to the licensing and discipline of physical therapists. First, California Code of Regulations, title 16, section 1399.20 states an "act shall be considered to be substantially related to the qualifications, functions or duties of a person holding a license under the Physical Therapy Practice Act if to a substantial degree it evidences present or potential unfitness of a person to perform the functions authorized by the license in a manner consistent with the public health, safety or welfare. Such crimes or acts shall

12

include but not be limited to the following: . . . (c) Violating or attempting to violate any provision or term of the Medical Practice Act." Second, current section 2660, subdivision (a), previously section 2660, subdivision (h), specifies that a physical therapy license may be suspended or revoked for unprofessional conduct and expressly defines such unprofessional conduct to include a violation of any provision of the Medical Practice Act. (See Stats. 2013, ch. 389, § 54, pp. 3640-3643. [revising section 2660 and reordering subdivisions].)

Thus, the Legislature has incorporated the provisions of the Medical Practice Act, including section 2239, into the guidelines for the professional discipline of physical therapists. In doing so, the Legislature made an implied finding that the use of alcohol in a dangerous manner is sufficiently related to a physical therapist's fitness to practice his or her profession to justify the suspension or revocation of his or her license. (See *Watson, supra,* 176 Cal.App.4th at p. 1422-1423 [concluding section 2239 statutorily defines the use of alcohol in a dangerous manner as unprofessional conduct subject to discipline].)

*C. Analysis*

Here, the superior court found substantial evidence supported the Board's conclusion Walker was intoxicated at the time she hit the parked car, and that she therefore used alcohol in a manner dangerous to herself and others in violation of section 2239. Based on that finding, the court concluded the Board was justified in imposing discipline pursuant to section 2660. The court acknowledged there was no evidence alcohol use had actually affected Watson's professional practice, but concluded that the

13

Board was not required to make a separate nexus finding based on the analysis of section 2239 set forth in *Watson, supra,* 176 Cal.App.4th 1407.

In *Watson*, *supra,* 176 Cal.App.4th 1407, the Medical Board of California revoked the license of a physician based on four arrests for driving under the influence. (*Id*. at pp. 1411-1412.) None of the arrests had resulted in a conviction, although criminal charges related to the most recent arrest were still pending at the time the administrative hearing. (*Id*. at p. 1413-1414.) On appeal, the physician asserted section 2239 permitted discipline based on the use of alcohol in a dangerous manner only if there was a separate finding establishing a nexus between such use and the physician's ability to practice medicine safely. (*Id*. at p. 1411.) The court determined the Legislature had made an implied finding that the use of alcohol in a dangerous manner was de facto unprofessional conduct that substantially related to the physician's fitness to practice medicine such that no further finding was required in an individual case, and that it was constitutional for the Legislature to establish the nexus in this manner. (*Id*. at pp. 1418-1424.)

Although *Watson* addressed the discipline of a physician under section 2239 of the Medical Practice Act, the Board and the Legislature have incorporated the Medical Practice Act into the guidelines for the professional discipline of physical therapists, and has specifically defined a violation of any provision of the Medical Practice Act as unprofessional conduct warranting discipline. (See § 2660, subd. (a); Cal. Code Regs., tit. 16, §1399.20.) As such, the reasoning in *Watson* is directly applicable in the present case and the superior court did not err in concluding the Board had the authority to

14

discipline Walker without making a separate nexus finding.  (See *Watson, supra,* 176 Cal.App.4th at pp. 1411, 1424.)

Walker asserts both *Watson* and *Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757 (*Griffiths*), a case the court relied on in *Watson*, involved more than one alcohol related incident or conviction and thus cannot support the Board's imposition of discipline based on a single isolated use of alcohol in a dangerous manner here. However, neither case establishes multiple instances are necessary to establish a nexus; and instead, each supports the conclusion that the use of alcohol in a dangerous manner— or conduct resulting in alcohol-related convictions—meets the constitutional nexus requirement because the Legislature has appropriately determined it is unprofessional conduct logically related to the fitness of an individual to treat patients.  (See *Watson, supra,* 176 Cal.App.4th at pp. 1413-1414, 1421; *Griffiths, supra,* at p. 762.)  Moreover, in *Griffiths*, the number of alcohol-related misdemeanor convictions at issue was relevant because section 2239 specifically defines either a felony conviction or *more than one* misdemeanor conviction related to alcohol as unprofessional conduct.  (*Griffiths, supra,* at pp. 770, 774.)  By contrast, the plain language of section 2239 indicates any use of alcohol in a dangerous manner constitutes unprofessional conduct.

Further, as Walker recognizes, in *Sulla v. Board of Registered Nursing* (2012) 205 Cal.App.4th 1195, 1207 (*Sulla*) the court concluded the nursing board properly imposed discipline on a nurse based on a single incidence of driving under the influence of alcohol.  Walker asserts this case is not instructive because it is not necessary to hold physical therapists to the same standard as nurses as nurses are more directly responsible

15

for the health and welfare of their patients.  However, the Legislature has declared

otherwise.  The language of section 2762—the provision at issue in *Sulla*—is similar to

that of section 2239, and both establish a nexus between the use of alcohol in a dangerous

manner and the fitness of a healthcare professional, either a nurse or physician, to treat

patients.  By incorporating the Medical Practice Act, including section 2239, into the

guidelines for disciplining physical therapists, the Legislature has indicated the same

nexus exists with respect to a physical therapist's fitness to treat patients.  We do not

question the Legislature's wisdom in making that conclusion, particularly where courts

have found both statutes to be constitutional.  (*Id*. at p. 1207; *Watson*, *supra*, 176

Cal.App.4th at p. 1421.)  Walker also asserts *Sulla* is distinguishable because the

discipline there was based on Sulla's conviction for driving under the influence, but the

court in *Sulla* relied on both the dangerous use and alcohol-related provisions and, in any

event, the fact remains that the discipline was based on only one instance of improper

alcohol use.  (*Sulla, supra,* 205 Cal.App.4th at p. 1201.)

Moving beyond the plain meaning of section 2239 itself, Walker contends the

legislative history indicates the Legislature was referring to the habitual use of alcohol—

and not a single isolated incident—when it defined the use of alcohol in a dangerous

manner as unprofessional conduct.  We do not find the argument compelling.  The plain

meaning of the statute can be ascertained from section 2399 itself, and there is no need to

turn to the legislative history to impart some additional meaning.  (See *Borikas v.*

*Alameda Unified School District* (2013) 214 Cal.App.4th 135, 146.)

16

Further, even if we do look to the legislative history, it does not reveal an intention by the Legislature to require the habitual use of alcohol, but instead indicates the Legislature was attempting to define problematic uses of alcohol more specifically. Walker asserts the Legislature added the language regarding the use of alcohol in a dangerous manner in section 2239 to replace the phrase "habitual intemperance", thereby implying the language must relate to the habitual use of alcohol. (See Sen No. 1071, Reg. Sess. (1947); Stats. 1947, ch. 308, § 1, p. 867.)[3] However, in so doing, the Legislature sought to replace an ambiguous term with a more specific and well defined set of criteria to provide additional guidance as to when the use of alcohol was sufficiently related to the practice of the profession to justify the imposition of discipline. (See James A. Arnerich, Director Dept. of Prof. and Vocational Stds., Inter-Departmental Communication to Earl Warren, Gov. of Cal., May 9, 1947) As we give significance and meaning to all words in the statute, we decline Walker's suggestion that we limit the more detailed language in the current version of section 2239 to the ambiguous term the Legislature sought to replace. (See *City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47,54.) Moreover, section 2660 continues to list "habitual intemperance" as a ground for discipline separate from violations of the Medical Practice Act, further indicating the Legislature did not intend section 2239 to be limited to conduct demonstrating "habitual intemperance." (See *McLaughlin v. State Bd. of Education*

---

3    The Board submitted an unopposed motion for judicial notice of a number of items related to the legislative history, dated July 25, 2016. Evidence Code sections 452 and 459 permit this court to take judicial notice of such materials, and we hereby grant the motion.

17

(1999) 75 Cal.App.4th 196, 211 [individual statutes must be construed with reference to the entire scheme of law].)

In the event that we conclude, as we do, that section 2239 permits discipline based on a single use of alcohol in a dangerous manner, Walker asserts California Code of Regulations, title 16, section 1399.20 requires more because it expressly requires that conduct be substantially related to the qualifications, functions or duties of a physical therapist to be grounds for discipline. However, Walker fails to acknowledge that the statute goes on to define a violation of any provision of the Medical Practice Act as an act substantially related to such qualifications, functions or duties. (Cal. Code Regs., tit. 16, §1399.20, subd. (c).) Thus, contrary to Walker's assertion, California Code of Regulations, title 16, section 1399.20 indicates a violation of section 2239 is substantially related to a physical therapist's qualifications, functions or duties, and is therefore sufficient to justify the imposition of discipline without a separate nexus finding.

Finally, Walker contends the passage of time between the 2011 incident and the Board's imposition of discipline mitigate against a finding that her alcohol use affected her fitness to practice physical therapy, particularly since she had no further documented incidents of misconduct related to alcohol in the interim period. Walker asserts there was a four-year delay between the incident and the imposition of discipline but that period includes the 18 months between the incident and Walker's plea, the administrative hearing, and the Board's reconsideration of the proposed decision. Walker provides no authority indicating the four-year period was unreasonable or that it precluded the imposition of discipline pursuant to sections 2239 and 2660. Moreover, the term of

18

Walker's probation indicating the Board would remove the alcohol-related conditions if the required professional evaluation determined Walker was not abusing alcohol indicates the Board did consider the fact that there were no further reports of alcohol-related misconduct.

We therefore conclude the superior court did not err in determining the relevant statutes authorized the Board to impose discipline on Walker.

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


HALLER, Acting P. J.


IRION, J.

Filed 11/8/17

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GRACE LORRAINE WALKER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PHYSICAL THERAPY BOARD OF CALIFORNIA,<br><br>    Defendant and Respondent. | D071984<br><br><br><br>(Super. Ct. No. 30-2015-00769721)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed October 16, 2017, was not certified for publication. It appearing the opinion meets the standards specified in California Rules of Court, rule 8.1105(c), the respondent's request pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and ORDERED that the words "Not to be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein to be published in the Official Reports.

HALLER, Acting P. J.

Copies to:  All parties